IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAUDIA GARCIA, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:06-CV-1936-D |
| VS. | § | (Consolidated with Civil Action |
| | § | Nos. |
| | § | 3:06-CV-1937-D, 3:06-CV-1938-D, |
| BOYAR & MILLER, P.C., et al., | § | 3:06-CV-1939-D, 3:06-CV-2177-D, |
| | § | 3:06-CV-2206-D; 3:06-CV-2236-D, |
| Defendants. | § | 3:06-CV-2241-D; |
| | § | and 3:07-CV-0984) |

MEMORANDUM OPINION
AND ORDER

In these nine consolidated actions brought by undocumented workers who allege claims arising from a failure to file timely Applications for Alien Employment Certification ("Applications") under the LIFE Act Amendments of 2000, 8 U.S.C. § 1255(i)(1)(B) and (C) (the "LIFE Act"), several defendants move to dismiss or for judgment on the pleadings. They contend that plaintiffs' claims are not ripe, plaintiffs have not exhausted available administrative remedies, they cannot state claims on which relief can be granted, and they have not pleaded fraud with the required particularity. For the reasons that follow, the court grants the motions in part and denies them in part and gives plaintiffs 30 days to amend their complaints.

Plaintiffs are undocumented workers who are present or former employees of defendant Café Express LLC ("CEL").[1] CEL acquired defendant Augusta Foods, LLC ("Augusta") during a corporate restructuring in early 2002. Defendant Wendy's International, Inc. ("WI") owns a majority interest in CEL.

Plaintiffs sought to take advantage of the LIFE Act, which afforded certain aliens who are physically present in the United States an opportunity to apply for an adjustment to legal permanent resident status (and eventually United States citizenship), provided the Applications were submitted by the April 30, 2001 deadline. CEL, Augusta, and WI, who stood to benefit if plaintiffs obtained legal permanent resident status, decided to take advantage of the LIFE Act and to undertake the obligation of ensuring that all employees who qualified applied for permanent residency. In exchange for weekly payroll deductions, CEL, Augusta, and WI agreed to file the Applications. CEL, Augusta, and WI initially retained defendant Boyar & Miller, P.C. ("Boyar & Miller"), and later retained Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., two law firms, to file and prosecute the Applications. Plaintiffs allege that the lawyers missed the critical April 30, 2001

---

[1]The court recounts the evidence favorably to plaintiffs as the nonmovants. *See Royal Bank of Can. v. FDIC*, 733 F. Supp. 1091, 1094 (N.D. Tex. 1990) (Fitzwater, J.) (addressing Fed. R. Civ. P. 12(b)(6)).

deadline, thereby essentially eliminating any possibility that plaintiffs can remain in the United States, secure legal status in this country for themselves and their families, and ultimately become United States citizens.

Plaintiffs aver that CEL, Augusta, and WI affirmatively misled them into believing the Applications had been timely filed, and they continued to collect the payroll deductions even after they knew or should have known that the Applications were not timely filed. Ultimately, however, defendants notified plaintiffs that their Applications could not be successfully completed and that, unless plaintiffs could establish that their Applications were timely, their employment would be terminated.

Plaintiffs filed these consolidated lawsuits, alleging claims against some or all defendants for legal malpractice, breach of contract-legal malpractice, breach of contract, negligence, negligent misrepresentation, unjust enrichment/restitution, conversion, breach of fiduciary duty, fraud, and intentional misrepresentation. In its prior opinion in this case, *Garcia v. Boyar & Miller, P.C.*, 2007 WL 1556961 (N.D. Tex. May 30, 2007) (Fitzwater, J.), the court granted plaintiffs leave to amend. *Id.* at *6. On May 31, 2007 plaintiffs in five of the nine consolidated

cases[2] filed first amended petitions ("complaints").[3]  In response,

defendants have filed the following motions to dismiss and for

judgment on the pleadings[4]: WI's June 13, 2007 motion to dismiss

and for judgment on the pleadings; CEL's June 13, 2007 motion to

dismiss and for judgment on the pleadings; the June 21, 2007 motion

to dismiss and for judgment on the pleadings of Boyar & Miller, Jay

William Boyar, David M. Bond, Gary W. Miller, Timothy J. Heinrich,

Steven D. Kesten, Stephen L. Johnson, Trent L. Rosenthal, Lee A.

Collins, Chris Hanslik,[5] and E. Michelle Bohreer ("Attorney

defendants"); and Augusta's June 21, 2007 motion to dismiss and for

judgment on the pleadings.

CEL moves to dismiss under Fed. R. Civ. P. 9(b), 12(b)(1),

12(b)(6), and/or 12(c).  It contends that plaintiffs' claims are

---

[2]Seven of the nine cases are brought by individual plaintiffs,
and two are brought by multiple plaintiffs.

[3]In this memorandum opinion, the court uses the term
"complaints" to refer to the first amended petitions filed on May
31, 2007 by plaintiffs Claudia Garcia, Jaime Chavez, David E. Cruz,
Jesus Maldonado, and Ophelia Sanhez Lopez, and to the pleadings
filed in state court by the remaining plaintiffs.

[4]Defendants have filed Rule 12(b)(6) and Rule 12(c) motions
because some plaintiffs filed complaints on May 31, 2007 and others
did not.  *See* CEL Br. 1 n.1.  The Rule 12(b)(6) motions are
addressed to the complaints filed on May 31, 2007, and the Rule
12(c) motions are addressed to the complaints filed in state court
by plaintiffs who did not amend.  *See id.*  As the court points out
*infra* at § II(B), the Rule 12(b)(6) and Rule 12(c) standards are
the same.  Accordingly, in deciding these motions, the court need
not distinguish between them according to the Rule under which they
were filed.

[5]Plaintiffs have sued this defendant as "Chris Hanslick."

not ripe and that plaintiffs have not exhausted their administrative remedies, that CEL cannot be held liable for conduct that occurred before it came into existence in 2002, and that counts 9 and 10 (which allege fraud and intentional misrepresentation) must be dismissed because plaintiffs have not pleaded fraud with sufficient particularity.

WI maintains that it is entitled to dismissal under Rules 12(b)(6) and 12(c) on the grounds that it cannot be held liable as a member or manager of CEL for the acts or omissions of CEL, and that it did not assume CEL's liabilities when it became a manager of CEL. WI states that if the court denies its motion, it is also entitled to dismissal on the grounds presented in CEL's motion.[6]

The Attorney defendants argue that plaintiffs' claims must be dismissed under Rules 12(b)(1), 12(b)(6), 12(c), and/or 9(b) because they are not ripe, plaintiffs have not exhausted their administrative remedies, and plaintiffs have not pleaded fraud with particularity.

Augusta moves to dismiss or for judgment on the pleadings under Rules 9(b), 12(b)(1), 12(b)(6), and/or 12(c), contending that plaintiffs' claims are not ripe, and that they have not exhausted

---

[6]This argument is made in a footnote, in what appears to be eight-point font. *See* WI Br. 7 n.4. This assertion should have been made in the body of the brief. But because plaintiffs are aware that WI has made this alternative argument and have been able to respond to it, the court will consider the arguments that WI has adopted from CEL's motion.

their administrative remedies, counts 5, 9, and 10 do not plead any particular misstatements by anyone with Augusta while it was the employer, the economic loss rule bars plaintiffs' negligence claim, plaintiffs' breach of fiduciary duty, conversion, and unjust enrichment claims fail as a matter of law, and plaintiffs have failed to allege a breach of contract by Augusta.

## II

### A

When a defendant files a Rule 12(b)(1) motion without supporting evidence, the attack is considered facial.[7]  The court is required to examine the sufficiency of the allegations of the complaint, assuming them to be true.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981).  The court must deny the motion if the allegations are sufficient to allege jurisdiction.  *Id.*

### B

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litig.*, ___ F.3d ___, 2007 WL 2200004, at *10 (5th Cir. Aug. 2, 2007) (quoting

---

[7]Although CEL has submitted an evidence appendix that contains its certificate of formation and two SEC Form 10-Qs filed by WI, these documents are not offered in support of CEL's ripeness challenge.  Instead, they appear to be offered to support CEL's argument that it did not come into existence, and that WI did not own any interest (or a majority interest) in CEL, until after the application deadline expired.  *See* CEL Br. 4.  The other defendants have not submitted evidence with their motions.  Accordingly, their Rule 12(b)(1) motions also present facial challenges.

*Bell Atl. Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl.*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal Breaches Litig.*, ___ F.3d ___, 2007 WL 2200004, at *10 (internal quotation marks omitted) (quoting *Bell Atl.*, 127 S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464 (5th Cir. 2004)).

The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion under Rule 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (Fitzwater, J.) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368, at 591 (Supp. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that

used in a Rule 12(b)(6) motion.") (footnote omitted)).  "In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Id.* (internal quotation marks and citation omitted) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

C

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Under Rule 9(b), a complaint alleging fraud must specify the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what [the person] obtained thereby.'"  *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).  A plaintiff must "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997)).  In other words, the requirements are analogous to "the first paragraph of a newspaper story, namely the who, what, when, where, and how."  *Melder v. Morris*, 27 F.3d 1097, 1100 n.5

(5th Cir. 1994) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). This Rule should be applied "with force, without apology." *Williams*, 112 F.3d at 178. "'[T]he particularity demanded by Rule 9(b) differs with the facts of each case[.]'" *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F.Supp.2d 601, 613 (S.D. Tex. 2001) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)); *see Williams*, 112 F.3d at 178 (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific.").

Rule 9(b) is not intended, however, "to procure punctilious pleading detail." *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.). It serves neither "as a throwback to the hypertechnical pleading requirements of the Field Code nor requires needlessly repetitive pleading." *Id.* (citing *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 251 (W.D. Tex. 1979) (Higginbotham, J.)). Rule 9(b) must be "'read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990) (some internal quotation marks omitted)). Thus it must be viewed in light of Rule 8(a)'s goal of "simple, concise, and direct" pleadings. *Williams*, 112 F.3d at 178 (quoting Rule 8(e)(1)).

> The court's key concern in assessing a
> complaint under Rule 9(b) is to determine
> whether the plaintiff seeks to redress
> specific wrongs or whether the plaintiff
> instead seeks the opportunity to search out
> actionable wrongs. The complaint must be
> sufficiently particular to show that the
> plaintiff is not seeking a license to go
> fishing for indicia of fraud.

*FDIC v. Gaubert*, No. 3-90-1196-D, slip op. at 7 (N.D. Tex. Sept. 4, 1990) (Fitzwater, J.); *see Am. Equitable Life Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 1989 U.S. Dist. LEXIS 16540, at *11 (N.D. Tex. Dec. 21, 1989) (Fitzwater, J.).

### III

The court turns first to the common grounds on which all defendants rely to seek dismissal.[8] Defendants maintain that these consolidated cases must be dismissed because plaintiffs' claims are not ripe.

### A

Defendants rely on the following grounds[9] to contend that plaintiffs' claims are based on speculative future events and therefore are not ripe: they are based on the assumption that their Applications will be denied solely on the ground that they are

---

[8]As noted, *see supra* note 6, the common arguments that include WI are derived from its reliance on CEL's motion as an alternative to the grounds posited in its own motion.

[9]CEL, WI, and Augusta rely on the same arguments because WI and Augusta adopt CEL's contentions. The Attorney defendants rely on substantially similar variations of some of the contentions that the other defendants make.

untimely, plaintiffs have not exhausted their administrative remedies in an attempt to adjust their status, and U.S. Citizenship & Immigration Services ("CIS") has not brought removal proceedings against them, the administrative agencies that are processing the Applications or a reviewing court may conclude that the Applications were timely or that their untimeliness should not be an absolute bar, the rules may change due to immigration reform, and it may be determined that the Applications should be denied for reasons that are unrelated to the filing deadline.

Plaintiffs respond, in pertinent part, that their claims are ripe and are not hypothetical because, as a result of defendants' conduct, they are automatically excluded from permanent residency and (ultimately) citizenship, and they must leave the country for an uninterrupted ten-year period before they will be allowed to apply again.

B

Plaintiffs assert that defendants' ripeness-based Rule 12(b)(1) motions present facial challenges to the court's subject matter jurisdiction. *See* Ps. Resp. (to CEL Mot.) 10; Ps. Resp. (to Attorney defendants Mot.) 2 (adopting arguments in response to CEL motion); Ps. Resp. (to Augusta Mot.) 2 (adopting arguments in response to CEL and Attorney defendants motions).[10] In their reply

---

[10]Plaintiffs' brief in response to WI's motion does not make this assertion, presumably because WI did not raise ripeness in its motion, but did so in a footnote in CEL's motion. *See supra* note

- 11 -

briefs, defendants do not dispute that their Rule 12(b)(1) motions present only facial challenges. Accordingly, the court is required to examine the sufficiency of the allegations of the complaints, assume them to be true, and deny the motions if the allegations are sufficient to allege jurisdiction. *See Paterson*, 644 F.2d at 523.

Assuming, as it must, that the allegations of plaintiffs' complaints are true, the court concludes that their claims are ripe.

> The general rule for determining whether ripeness exists is easy to state and hard to apply. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Int'l Tape Mfrs. Ass'n v. Gerstein*, 494 F.2d 25, 27 (5th Cir. 1974) (internal quotation marks and ellipsis omitted) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)). "The controversy cannot be hypothetical abstract, academic or moot." *Id.*

> A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical. The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration, and a case is not ripe if further factual development is required.

---

6.

*Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 2006 WL 2850178, at *3 (E.D. La. Oct. 2, 2006) (internal quotation marks omitted) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987)).

Plaintiff Claudia Garcia ("Garcia")[11] alleges, in relevant part, that due to defendants' conduct, he[12] is automatically barred and banished from the United States for a period of ten years, he and his family are barred from legalizing in the United States, they have lost their only opportunity to be legal in the United States, and that they have lost all opportunities that come with having legal status and the future opportunity to become a United States citizen. Compl. ¶ 5. He avers that he paid thousands of dollars in legal fees to defendants for which he received no benefits, he was duped by high-powered lawyers and his employer into believing he had a secure job and was (or soon would be) a permanent resident of the United States, he was done a grave disservice that cannot be remedied, and he is entitled to recover damages in the form of money taken from his paychecks for several years to pay for fees. *Id.* at ¶ 35. Garcia alleges that he is

---

[11]The court will cite the complaint filed by Garcia, as do defendants, because it is exemplary of the complaints filed by all plaintiffs.

[12]In Garcia's complaint, he is sometimes referred to by a male pronoun and sometimes by a female pronoun. In one sentence, he is referred to as being both. Compl. ¶ 5. The court will refer to Garcia as a male because this seems to be the dominant usage in the relevant parts of the complaint.

entitled to recover damages in the form of money stolen from his paychecks, money he would have earned but for his termination, and damages to compensate him for the loss of permanent residency and the likelihood that he will have to qualify eventually for United States citizenship, and what this means to him and his family. *Id.* at ¶ 36. He avers that there is very little likelihood that he will ever obtain permanent residency or United States citizenship, he can expect to be deported, and he must begin the application process anew, facing the long delays and improbabilities that accompany the process. *Id.*

Accepting these allegations as true, plaintiffs have asserted claims that are definite and concrete, touching the legal relations of parties having adverse legal interests. Plaintiffs have presented a real and substantial controversy admitting of specific relief through a decree of a conclusive character. The court therefore denies defendants' motions to dismiss to the extent based on the common assertion that plaintiffs' claims are not ripe.

IV

Defendants next present the common and related argument that plaintiffs' claims must be dismissed under Rule 12(b)(1) because they have not exhausted their administrative remedies.

Defendants' exhaustion argument is, at least in part, essentially a restatement of their ripeness-based contention. That is, that because plaintiffs have not pursued their administrative

remedies, it is uncertain whether their applications will be denied. They also maintain that the agencies have unique expertise and discretion in immigration proceedings, and that allowing these claims to proceed presents the likelihood that the court system will be overwhelmed by illegal immigrants seeking to avoid long lines at the Department of Labor ("DOL") and CIS by abandoning administrative filings and asking the courts to decide whether they are entitled to legal permanent resident status.

Assuming for purposes of defendants' Rule 12(b)(1) facial jurisdictional challenge that the allegations of plaintiffs' complaints are true, the court holds that these cases cannot be dismissed based on a failure to exhaust. First, as pleaded, plaintiffs have alleged that they will be unable to cure insuperable impediments to obtaining lawful permanent residency through the administrative process, except by remaining outside the United States for ten years and initiating the adjustment process anew. In other words, they have alleged that no form of administrative agency relief is available to them through the exhaustion of administrative agency remedies. Second, the assertion that allowing these cases to proceed will somehow establish a right of illegal immigrants to avoid administrative requirements imposed by DOL or CIS, and to seek relief in court, is unsupported. These cases are brought by private parties seeking contract- and tort-based relief in the form of damages from other

private parties, not adjustment of immigration status through a court order directed at government entities.

Accordingly, the court denies defendants' motions to dismiss to the extent they are based on the contention that plaintiffs have failed to exhaust their administrative remedies.

V

The final common argument is defendants' contention that plaintiffs have failed to plead fraud with particularity, as required by Rule 9(b).

The court has explained above what is necessary for plaintiffs to comply with Rule 9(b). *See supra* § II(C). The court agrees with defendants that plaintiffs have not satisfied the who, what, when, where, and how requirements of Rule 9(b). Again using Garcia's complaint as the exemplar, the allegations of ¶ 55 (which incorporates the prior allegations of the complaint) and ¶ 56 are plainly insufficient to plead fraud with the required specificity. And plaintiffs' efforts in their brief to explain how their complaints are sufficient, *see* Ps. Resp. (to CEL mot.) 24-25, are inadequate. Rule 9(b) compliance must be found in the complaints themselves, not in the opposition brief.

Accordingly, within 30 days of the date this memorandum opinion and order is filed, all plaintiffs——not just the five who filed amended complaints on May 31, 2007——must file amended complaints that plead fraud with the particularity required by Rule

9(b).

CEL moves to dismiss plaintiffs' claims on the ground that it cannot be held liable for conduct that occurred entirely before it came into existence. It asserts that all the conduct on which plaintiffs' claims are based——including the alleged late filing of the Applications——occurred before CEL came into being, and that the court should limit each plaintiff's claims against CEL to acts or omissions that occurred after CEL was formed.

Plaintiffs respond that CEL is liable under corporate successor liability for Augusta's bad acts and is also liable for continuing to commit the conduct that Augusta had undertaken.

Plaintiffs have adequately pleaded that CEL engaged in relevant conduct after it was formed. Using the Garcia complaint as an example, Garcia asserts that CEL is among the parties whom he identifies as the "Restaurant Defendants." Compl. at 2-3 & 3 n.2. He avers that the Restaurant Defendants deducted $25.00 per week from his paycheck for costs and legal fees involved in the application process, and that this continued through 2005. *Id.* at ¶ 26. These deductions are a basis for at least one of his claims. *Id.* at ¶ 51 (addressing conversion). Plaintiffs have therefore adequately pleaded that CEL engaged in at least some conduct that occurred after it came into existence. To this extent, CEL's motion must be denied.

Plaintiffs have not adequately *pleaded*,[13] as opposed to asserted in their response brief, however, that CEL did anything more than acquire Augusta's assets, i.e., that CEL assumed Augusta's liabilities. Under Texas law, CEL cannot be held liable on this basis for Augusta's conduct. *See* Tex. Bus. Org. Code Ann. § 10.254(b), *as amended by* 2007 Tex. Sess. Serv. Ch. 688 (H.B. 1737 (Vernon); *McKee v. Am. Transfer & Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1997) (Cummings, J.) (holding that "Texas law does not generally recognize successor liability for subsequent purchases of corporate assets." (citation omitted)). CEL is entitled to dismissal on this basis. Because the court is requiring that plaintiffs amend their complaints to plead fraud in the manner that Rule 9(b) requires, and consistent with the court's approach to allowing amendments where a pleading defect apparently can be cured,[14] the court will allow plaintiffs to amend their complaints

_____

[13]The court has only consulted plaintiffs' brief (which does not cite any pertinent allegations of their complaints) and the Garcia complaint. If plaintiffs have adequately pleaded corporate successor liability in one or more other complaints, they may include those averments in the amended complaints that they are required to file under the terms of this memorandum opinion.

[14]    In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that

- 18 -

in an attempt to plead a basis to hold CEL liable for Augusta's
conduct.

Unless in their amended complaints plaintiffs adequately plead
a basis to hold CEL liable for Augusta's conduct, or otherwise to
hold it liable for conduct that occurred entirely before it came
into existence, CEL's potential liability will be restricted to
conduct that occurred after it was formed.

VII

WI contends that plaintiffs' action must be dismissed because
WI cannot be held liable as a member or manager of CEL, and because
it did not assume CEL's liabilities when it became a manager of
CEL. Plaintiffs respond that they are seeking to hold WI liable
for its own conduct, and not merely as the majority shareholder
and/or manager of CEL. They maintain that WI's actions went beyond
those of a mere majority shareholder or manager. Plaintiffs also
contend that WI can be held liable under a theory of successor
liability because it assumed CEL's obligations.

As with CEL, plaintiffs have adequately pleaded a basis to
recover from WI for its own conduct, i.e., conduct undertaken
outside its capacity as a member or manager of CEL. Examining

---

will avoid dismissal.

*In re Am. Airlines, Inc. Privacy Litig.*, 370 F.Supp.2d 552, 567-68
(N.D. Tex. 2005) (Fitzwater, J.) (brackets omitted) (addressing
Rule 12(b)(6) dismissal) (quoting *Great Plains Trust Co.*, 313 F.3d
at 329).

Garcia's complaint, he includes WI as one of the Restaurant Defendants, Compl. at 2-3 & 3 n.2, and he asserts that all three Restaurant Defendants "were involved in the transactions set forth in the pleading," *id.* at 3 n.2. He avers that the Restaurant Defendants engaged in acts and omissions that are the basis for his claims. *Id.* at ¶¶ 26, 30, 31, and 33. WI has presented arguments in its brief that would establish that it never acted in a capacity other than as a member or manager of CEL. But "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Bell Atl.*, 127 S.Ct. at 1965 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). Accordingly—without suggesting how the court would decide a motion for summary judgment that presents this issue—the court denies WI's motion to dismiss to the extent that plaintiffs seek to hold it liable for its own conduct undertaken outside its capacity as a member or manager of CEL.

The court agrees with WI, however, that plaintiffs have failed to plead a basis for holding WI liable for the conduct of a predecessor. They have not alleged facts that support such a theory, and the court grants WI's motion to the extent it is based on the premise that it cannot be held liable for a predecessor entity's acts or omissions. But as with CEL's similar motion, the court will allow plaintiffs an opportunity to allege such facts in an amended complaint, if they can.

Finally, the court turns to Augusta's five grounds for dismissal that are related to claims asserted only against it. Augusta maintains that the economic loss rule bars plaintiffs' negligence claim, plaintiffs' claims for breach of fiduciary duty, conversion, and unjust enrichment fail as a matter of law, and plaintiffs have failed to allege a breach of contract by Augusta.

The court agrees with Augusta that plaintiffs have not pleaded a negligence claim that falls outside the restrictive scope of the economic loss rule. *See, e.g., Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App. 2001, no pet.) ("To be entitled to damages for negligence, a party must plead and prove either a personal injury or property damage as contrasted to mere economic harm."). Plaintiffs respond that they seek damages for more than mere breach of contract and that they sue for non-economic damages, including for mental anguish. But their present complaints do not adequately allege claims for non-economic relief or for mental anguish damages.[15]

The court also concludes that plaintiffs have failed adequately to plead a claim for breach of fiduciary duty. They have not alleged facts that, taken as true, establish that Augusta and plaintiffs had a fiduciary relationship. The fact that

---

[15]Augusta argues in its reply brief that plaintiffs cannot recover mental anguish damages. The court need not address this contention to decide Augusta's present motion.

plaintiffs in their brief can articulate a theory for why, by its voluntary actions, Augusta entered into a fiduciary relationship with plaintiffs does not cure the deficient allegations of their complaints.

Regarding plaintiffs' claims for conversion, unjust enrichment, and breach of contract, the court agrees with Augusta that plaintiffs essentially rely on a formulaic recitation of the elements of these causes of action. Plaintiffs must augment their present complaints with factual allegations that are sufficient to raise a right to relief above the speculative level. Accordingly, the court also dismisses these claims against Augusta.

As with the other dismissed claims, the court grants plaintiffs leave to amend so that, if they have a basis to do so, they can plead the causes of action against Augusta.

*       *       *

For the reasons stated, the court grants in part and denies in part the following motions: WI's June 13, 2007 motion to dismiss and for judgment on the pleadings; CEL's June 13, 2007 motion to dismiss and for judgment on the pleadings; the Attorney defendants' June 21, 2007 motion to dismiss and for judgment on the pleadings; and Augusta's June 21, 2007 motion to dismiss and for judgment on

the pleadings. Plaintiffs must file their amended complaints within 30 days of the date this memorandum opinion and order is filed.

        **SO ORDERED.**

        August 28, 2007.


                              _____
                              SIDNEY A. FITZWATER
                              UNITED STATES DISTRICT JUDGE