## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CLAUDIA GARCIA | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 3:06-CV-01936-D |
| v. | § | (Consolidated with |
| | § | Civil Action No. 3:06-CV-01937-D, |
| BOYAR & MILLER, PC; CAFÉ EXPRESS, | § | Civil Action No. 3:06-CV-01938-D, |
| LLC; WENDY'S INTERNATIONAL, INC.; | § | Civil Action No. 3:06-CV-01939-D |
| AUGUSTA FOODS, LLC; JAY WILLIAM | § | Civil Action No. 3:06-CV-02177-D |
| BOYAR; DAVID M. BOND; GARY W. | § | Civil Action No. 3:06-CV-02206-D |
| MILLER; TIMOTHY J. HEINRICH; | § | Civil Action No. 3:06-CV-02236-D |
| STEVEN D. KESTEN; STEPHEN L. | § | Civil Action No. 3:06-CV-02241-D |
| JOHNSON; TRENT L. ROSENTHAL; LEE | § | Civil Action No. 3:06-CV-00984-D) |
| A. COLLINS; CHRIS HANSLICK; E. | § |  and, |
| MICHELLE BOHREER; and BAKER, | § | Civil Action No. 4:06-CV-03374 |
| DONELSON, BEARMAN, CALDWELL & | § | (originally removed to the Southern |
| BEARKOWITZ, P.C. | § | District of Texas) |
| | § | |
| Defendants. | § | **ECF** |
| | § | |

## PLAINTIFFS' AMENDED AND COMBINED COMPLAINT

TO THE HONORABLE JUDGE:

COMES NOW, all Plaintiffs in these consolidated cases for the purpose of filing this their *Amended and Combined Complaint* and in support thereof allege as follows:

### INTRODUCTION

1.       The LIFE Act Amendments of 2000 allowed an undocumented alien physically present in the United States on the date of enactment to file for and receive permanent residency in the United States, if and only if, an *Application for Alien Employment Certification* (hereinafter *Application(s)*) was received by the Department of Labor on or before April 30, 2001.   Defendants agreed to file *Applications* for the

Plaintiffs.  In accepting and executing this duty, the law firm of Boyar & Miller (and later Baker Donelson) was retained to file and prosecute the *Applications*.  Boyar & Miller and the other attorneys and law firms named as Defendants (hereinafter the "Attorney Defendants") in this action filed the *Applications*, but missed the deadline for filing the *Applications* for each of the Category I and Category II Plaintiffs.

2.      After missing the filing deadline, the Defendants took steps to keep the Plaintiffs in the dark, and led them to believe that their *Applications* had been filed timely, and, in due course, would be processed.  The filing deadline was crucial for the Plaintiffs to be allowed to eventually process their legal status inside the United States and thus avoid having to return to their country of nationality.  Because the *Applications* for the Category I and Category II Plaintiffs were late filed, they are subject to the harsh penalties of INA § 212(a)(9).  That section of the immigration law states that an alien departing the United States who has accrued unlawful presence in the United States for one year or more and departs will be barred from returning to the United States for a period of ten years.  Because the Category I and Category II Plaintiffs' *Applications* were not filed timely, these Plaintiffs lost their opportunity to become legal permanent residents in the United States, and cannot avoid the ten year bar and subsequent delays before reapplying.

3.      Defendants established a program for sponsorship with the INS.[1] in exchange for deducting $25.00 or more a week from the Plaintiffs' paychecks, the

---

[1] On November 25, 2002, the President signed the <u>Homeland Security Act of 2002</u> into law. This law transferred INS functions to the new Department of Homeland Security (DHS). Immigration enforcement functions were placed within the Directorate of Border and Transportation Security (BTS), either directly, or under Customs and Border Protection (CBP) (which includes the Border Patrol and INS Inspections) or Immigration and Customs Enforcement (ICE) (which includes the enforcement and investigation components of INS such as Investigations, Intelligence, Detention and Removals).  On March 1, 2003,

Restaurant Defendants[2] and the Attorney Defendants assumed the duty to properly, competently and timely file and properly prosecute the *Applications,* which they failed to do.

4.      The Defendants compounded the egregiousness of their actions by continuing to deduct $25.00 or more a week from the Plaintiff's paychecks for the next several years, despite the fact that they knew, or should have known, that the *Applications* were not filed timely.

5.      The result to the Plaintiffs and their families can only be described as disastrous.  Applicants who timely filed on or before April 30, 2001 are allowed to process their paperwork inside the United States and thus avoid the terrible punishment of INA 212(a)(9) that requires an applicant to depart the United States and try to process their paperwork from their country of origin.  This provision automatically bars the applicant and banishes him for a period of 10 years from the United States.  The LIFE Act was created to allow undocumented aliens a window of opportunity to eventually correct their legal status inside the United States and thus avoid the serious consequences of INA 212(a)(9).  Because the Defendants missed the filing deadline of April 30, 2001, the Category I and II Plaintiffs and their families are barred from legalizing in the United States, and have lost their only opportunity to legally reside in the United States.  As such the Category I and II Plaintiffs have lost all opportunities that come with having legal

---

services formerly provided by the Immigration and Naturalization Service (INS) transitioned into the Department of Homeland Security (DHS) under U.S. Citizenship & Immigration Services (USCIS).  With the acknowledgement of these changes, the entity is referred to herein as "INS" for convenience.

[2]Defendant Café Express, LLC acquired Defendant Augusta Foods, LLC during a corporate restructuring in early 2002.  Defendant Wendy's International, Inc. owns a majority stake in Café' Express, LLC.  All three of these Defendants were involved in the transactions set forth in this pleading.  For convenience, Defendants Café Express, LLC, Augusta Foods, LLC, and Wendy's International, Inc. are referred to herein as the "Restaurant Defendants."

permanent resident status in the United States, as well as the future opportunity to become a United States Citizen.

6.      Café Express sent a letter to the Plaintiffs on or about July 7, 2006 (an exemplar of that letter is attached hereto and incorporated herein as Exhibit "A," but each Plaintiff received an individual copy of the same letter) informing them for the first time that their *Applications* submitted by the Defendants in 2001, could not be successfully completed.   Further, the Plaintiffs were told that unless they could prove that their individual *Application* was filed on or before April 30, 2001 they would be fired from their job on September 15, 2006.

7.      The Plaintiffs did not know until they received this letter that there was a problem with their *Applications*.   The Category I Plaintiffs are now well aware that their hopes and expectations of becoming permanent residents, and eventually citizens, of the United States have been stripped away, and their jobs have been terminated.   Other than the relief asked for in this lawsuit, they have absolutely no remedy.

8.      The Category II Plaintiffs still may become permanent residents even though their *Applications* were not filed timely.   In some cases, immigration law allows an applicant for a labor certificate to use the date of a previously filed application. However, this does not mean that the Category II Plaintiffs did not suffer damages – they did.   The Defendants are liable to the Category II Plaintiffs for the money in attorney fees, costs and services that were held out of their checks; damages for forcing these Plaintiffs to remain as indentured servants from 2001 to 2006 for fear of losing their opportunity to become permanent residents; for failing to provide competent legal and human resources services; mental anguish; for forcing them to work for lower wages than

comparable employees who had not been sponsored by the Restaurant Defendants; and for other damages as allowed by law.

## **PARTIES**

9.      Plaintiffs are residents of Texas.  The individual names of the Plaintiffs are set forth below under the heading "Categories of Plaintiffs."

10.      Defendant Boyar & Miller, P.C. is a law firm with its principal place of business at 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.  They may be served through their registered agent for service of process Gary W. Miller, 4265 San Felipe Street, Suite 1200, Houston, Texas 77027.

11.      Defendant Augusta Foods, LLC is a Texas limited liability corporation with a registered place of business at 5858 Westheimer Rd., Suite 110, Houston, Texas 77057.  It may be served through its registered agent for service of process:  Stephen D. Lerner, 109 N. Post Oak Lane, Suite 200, Houston, Texas  77024.

12.      Defendant Café Express, LLC is a Delaware limited liability company with a registered place of business at P.O. Box 256, Attention: Tax Department, Dublin, Ohio 43017-0256.  It may be served through its registered agent for service of process: CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.  Café Express, LLC is the successor in interest to Augusta Foods, LLC.

13.      Defendant Wendy's International, Inc. is an Ohio corporation with a registered place of business at Wendy's International, Inc., One Dave Thomas Blvd, Dublin, Ohio 43017.  It may be served by serving its registered agent of process: CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

14.     Defendant Jay William Boyar is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

15.     Defendant David M. Bond is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

16.     Defendant Gary W. Miller is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

17.     Defendant Timothy J. Heinrich is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

18.     Defendant Steven D. Kesten is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

19.     Defendant Stephen L. Johnson is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

20.     Defendant Trent L. Rosenthal is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

21.     Defendant Lee A. Collins is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

22.     Defendant Chris Hanslick is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

23.     Defendant E. Michelle Bohreer is an attorney licensed to practice law in the state of Texas.  She may be served at her business address which is the Rivianna Building, 2777 Alan Parkway, Suite 865, Houston, Texas 77019.

24.     Defendant Baker Donelson Bearman Caldwell & Berkowitz, P.C. is a Tennessee professional corporation with a registered place of business at Commerce Center, Suite 1000, 211 Commerce Street, Nashville, Tennessee 37201.  It may be served on the Texas Secretary of State through the long-arm statute because: (1)  the Secretary of State is the registered agent for the non-resident; (2) the non-resident engaged in business in Texas; (3) the non-resident does not maintain a place of business in Texas; (4) the non-resident does not have a registered agent for service of process in Texas; and, (5) the lawsuit arises out of the non-resident's business in Texas.  Additional notice may be given to the managing shareholder, Bruce Doeg, Commerce Center, Suite 1000, 211 Commerce Street, Nashville, Tennessee 37201.

## JURISDICTION AND VENUE

25.     Plaintiffs oppose and object to jurisdiction and venue in this Court. Plaintiffs chose various state court jurisdictions and venues for their individual causes of

action and timely filed a motion to remand after the cases were removed to federal court. Plaintiffs have stated causes of action that encompass purely state law matters. Plaintiffs maintain the objections to jurisdiction filed previously in this matter and affirmatively allege that this Court has no jurisdiction over the causes of action asserted herein. There is no diversity of citizenship between the parties, as a majority of the properly named defendants are Texas residents and the plaintiffs reside in Texas. No federal question has been raised or exists in this matter.

## CATEGORIES OF PLAINTIFFS

26. For simplicity and ease of reference, the plaintiffs can be divided into three categories. Throughout this complaint, the Plaintiffs will be referred to as follows:

a. **Category I Plaintiffs** – Category I Plaintiffs are undocumented workers employed and sponsored by the Restaurant Defendants whose Applications were filed after April 30, 2001. Category I Plaintiffs include the following persons: Carlos Cabrera, Pedro Lara Cebrian, Jaime Chavez, David E. Cruz, Gabriel Cua, Manuel Caleb Cua, Adrian Escorza, Fidencio Franco, Adrian Garcia, Claudia Garcia, Maria De La Luz Maldonado, Martin Garcia, Juventino Garcia, Maria Garcia, Vincente Garcia, Alberta Gonzalez, Jose Manuel Lopez, Ofelia Sanchez Lopez, Richard Lumas, Letecia Maiden, Francisco Maldonado, Jesus Alex Maldonado, Maria De La Luz Maldonado, Ana Maria Martinez, Luis E. Murillo, Augustin T. Navarro, Estanislao S. Navarro, Daniel Olivares, Benito Orea, Aura M. Par, Cesar Perez, Santiago Ramirez, Hugo Reynoso, Olga Rodriguez, Eduardo Rosales-Villalobos, Jorgelius Alonso Salazar, Valerio

Salazar, Jose Hilario Serratos, Araceli R. Sosa, Senorina Tapia, Raquel Toscano, Juan Artuto Torres, Francisco Romero Tzul, Mario Vidales, Maribel Angon Villafana, John Doe No. 1 (a/k/a Jose Adrian Garcia).

b. **Category II Plaintiffs** – Category II Plaintiffs are undocumented workers employed and sponsored by the Restaurant Defendants whose Applications were filed after April 30, 2001, but have or may become permanent residents through previous filings with INS prior to April 30, 2001. Category II Plaintiffs include the following persons: Eladia Barrientos, Fredi Luciano.

c. **Category III Plaintiffs** – Category III Plaintiffs are undocumented workers employed and sponsored by the Restaurant Defendants whose Applications were timely filed prior to April 30, 2001. Category III Plaintiffs include the following persons: Ricardo Holguin, Juan Ortega.

## FACTUAL ALLEGATIONS

27.     Plaintiffs were eligible to take advantage of the LIFE Act Amendments of 2000, P.L. 106-544, 8 U.S.C. §1255,[3] which changed the date in Section 245(i)(1)(B) to

---

[3]    8 U.S.C. §1255:  **Adjustment in status of certain aliens physically present in United States**.  (1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States – (A) who – (i) entered the United States without inspection; or (ii) is within one of the Classes enumerated in subsection (c) of this section; (B) who is the beneficiary (including a spouse or child of the principal alien, if eligible to receive a visa under section 203(d)) of – (i) a petition for Classification under section 204 that was filed with the Attorney General on or before April 30, 2001; or (ii) an application for a labor certification under section 212(a)(5)(A) that was filed pursuant to the regulations of the Secretary of Labor on or before such date; and (C) who, in the case of a beneficiary of a petition for Classification, or an application for labor certification, described in subparagraph (B) that was filed after January 14, 1998, is physically present in the United States on the date of the enactment of the LIFE Act Amendments of 2000; may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully  admitted for permanent residence.  The Attorney General may accept such application only if the alien remits with such application a sum equaling $1,000 as of the date of receipt of the application, but such application shall not be required from a child under the age of seventeen, or an alien who is the spouse or unmarried child of an individual who obtained temporary or permanent resident status under section 210 or 245A of the Immigration and Nationality Act or section 202 of the Immigration

April 30, 2001 and also added a paragraph (1)(C).  This section allows persons physically present in the United States on the date of the enactment of the LIFE Act Amendments of 2000 to apply to the Attorney General for the adjustment of their status to that of an alien lawfully admitted for permanent residency, if an *Application* was filed by April 30, 2001 with the Department of Labor.  A decision was made by the Restaurant Defendants at the corporate level to take advantage of the LIFE Act Amendments of 2000.

28.     As noted above, The Restaurant Defendants consist of Café Express, LLC, ("Café Express") Wendy's International, Inc. ("Wendy's") and Augusta Foods LLC ("Augusta").  On or around January 5, 2001, Café Express sent an email to its stores noting that Café Express would be sponsoring their employees for the alien certification program discussed above.[4]

29.     Augusta was the original sponsor of the alien certification program regarding the Plaintiffs.  As part of the program, Augusta and the Plaintiff entered into an agreement whereby $25.00 or more per week was deducted from the Plaintiffs' paycheck. This money was delivered for safe keeping to Augusta and was segregated.  Likewise, the specific deductions were substantially kept in the form in which they were received (automatic deduction) and they were certainly not the subject of a title claim by Augusta.

---

Reform and Control Act of 1986 at any date, who (i) as of May 5, 1988, was the unmarried child or spouse of the individual who obtained temporary or permanent resident status under section 210 or 245A of the Immigration and Nationality Act or section 202 of the Immigration Reform and Control Act of 1986; (ii) entered the United States before May 5, 1988, resided in the United States on May 5, 1988, and is not a lawful permanent resident; and (iii) applied for benefits under section 301(a) of the Immigration Act of 1990.  The sum specified herein shall be in addition to the fee normally required for the processing of an application under this section.  (2)  Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if -  (A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (B) an immigrant visa is immediately available to the alien at the time the application is filed.
[4] See letter from Michelle Diaz to Café Express restaurants, dated January 5, 2001, attached as Exhibit "B."

This money was specifically held back and segregated for safe keeping - to be used for the timely filing of employee applications for permanent residency.

30.     Tragically, the Plaintiffs' applications were not timely filed.  However, Augusta and the successor companies that were inseparably entangled with the scheme, Wendy's and Café Express, continued to deduct $25.00 or more per week from Plaintiffs' paychecks even though the Restaurant Defendants knew or should have known that the deadline was missed.  Augusta, Café Express and Wendy's breached their contract and became unjustly enriched by their conduct. Moreover, the Restaurant Defendants converted the Plaintiffs' money by wrongfully exercising dominion and control over it.

**A.      Additional Facts Related to the Fidcuciary Relationship Between the Restaurant Defendants and the Plaintiffs.**

31.  The Plaintiffs' relationship with Augusta, Café Express and Wendy's was not only contractual, there was also a fiduciary relationship among the parties.  More specifically, a fiduciary duty existed between Plaintiff and the Restaurant Defendants because the Restaurant Defendants were holding the funds deducted in trust for the Plaintiffs.  The Restaurant Defendants, as trustee, owed Plaintiffs, among other things, a duty to disclose all material facts known to it that might affect the Plaintiffs' rights.  This duty was breached and Plaintiffs suffered damages as a result.

**B.      Additional Facts Related to the Vicarious Liability Between the Restaurant Defendants vis-à-vis Each Other.**

32.  As mentioned above, originally the name of the entity sponsoring the alien certification of Café Express employees was Augusta.  Due to a corporate "restructuring," which resulted in no change of control, the name of the sponsoring employee was changed to Café Express in 2002.

33.     It is important to note that the "restructuring" was not one where Café Express purchased the assets of Augusta.  As will be shown below, the restructuring was simply a merger and/or a name change.  Indeed Café Express, Wendy's and Augusta are all inseparably intertwined with one another and each is vicariously liable for the acts of the other.  The joint enterprise between Augusta, Café Express, and Wendy's involved one set of restaurants.  The restaurants, employees, management, menu, and business model did not substantially change despite the fact that the name of the controlling entity and the percentage of ownership may have changed over the 5 year course at issue in this litigation.

34.     The relationship of the Restaurant Defendants is more specifically set forth in a letter titled "Name Change of Sponsoring Employer" (the original follows below the quoted text) submitted by Café Express to the Texas Workforce Commission wherein it states:

> The name of the entity originally sponsoring this alien for certification was Augusta Food, LLC ("Augusta").  On February 11, 2002, as part of a structured transaction to infuse minority capital into Express Foods Group LLC, a new entity was formed in which Restaurant Finance Corporation, a subsidiary of Wendy's International, Inc. owned the minority interest in the shares and Express Foods Group LLC retained majority ownership of Café Express, LLC, the new Texas employer.  Express Foods Group LLC previously owned 100% of the outstanding shares of Augusta Foods LLC. I, as the Director of Human Resource for Café Express, LLC was also the Director of Human Resources of the predecessor entity.  I filed via the internet, a registration form seeking a new TWC unemployment number. Because of the nature of the transaction by and among the varying entities, I did not reflect that the business of a predecessor taxpayer had been acquired.  All of the assets and employees formerly owned and controlled by Augusta Foods LLC, (Account No. 02-064852-0), were contributed by Express Foods Group LLC into the newly formed taxpayer, Café Express, LLC (TWC Account No. 08-805031-2), with the same shareholder retaining control and majority ownership of the new entity.  The new entity continues to function as it did at the same time of the application

and the alien continues in the same position with this new entity created only to accomplish this capital infusion.

---

**NAME CHANGE OF SPONSORING EMPLOYER**

The name of the entity originally sponsoring this alien for certification was Augusta Food, LLC ("Augusta"). On February 11, 2002, as part of a structured transaction to infuse minority capital into Express Foods Group LLC, a new entity was formed in which Restaurant Finance Corporation, a subsidiary of Wendy's International, Inc. owned the minority interest in the shares and Express Foods Group LLC retained majority ownership of Café Express, LLC, the new Texas employer. Express Foods Group LLC previously owned 100% of the outstanding shares of Augusta Foods LLC I, as the Director of Human Resource for Café Express, LLC, was also the Director of Human Resources of the predecessor entity. I filed via the internet, a registration form seeking a new TWC unemployment number. Because of the nature of the transaction by and among the varying entities, I did not reflect that the business of a predecessor taxpayer had been acquired. All of the assets and employees formerly owned and controlled by Augusta Foods LLC (Account No. 02-064852-0), were contributed by Express Foods Group LLC into the newly formed taxpayer, Café Express, LLC (TWC Account No. 08-805031-2), with the same shareholder retaining control and majority ownership of the new entity. The new entity continues to function exactly as it did at the time of the application and the alien continues in the same position with this new entity created only to accomplish this capital infusion.

If this form does not provide the Texas Workforce Commission with all the information necessary, please do not hesitate to contact Peggy Ricks, Boyar & Miller, P.C., 4265 San Felipe, Suite 1200, Houston, Texas 77027, (713) 850-7766 (Telephone), (713) 552-1758 (Facsimile). Additionally, should you have any suggestions for improving the form of our Summation of Recruitment Compliance, please let me know. I will be happy to revise the form for future responses so as to eliminate the need for additional and unnecessary paperwork on all parts. Thank you.

Respectfully submitted,

**CAFÉ EXPRESS, LLC D/B/A CAFE EXPRESS**



Michelle Diaz, Human Resource Director

SUBSCRIBED AND SWORN TO before me on this 30th day of March 2004 witness my hand and seal of office.

NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

PEGGY J. RICKS
MY COMMISSION EXPIRES
June 29, 2006

P:\R\002619\0000.3\151086..1                    4                                         CAFE 000869
                                                                                          CONFIDENTIAL

---

35.   Café Express is the successor in interest to Augusta Foods pursuant to a merger and/or a name change. As such, in addition to being liable for its own conduct, Café Express is liable for the misdeeds of Augusta. As evidenced by the letter above, Café Express is the same entity as Augusta, and controlled by the same people. There was merely a corporate name change – it did not affect the company's identity, property, rights or liabilities. This can be further evidenced by a letter sent from E. Michelle Bohreer to the Alien Labor Certification wherein she noted:

"[P]lease let this letter confirm that the name of the sponsoring employee [sic] was initially Augusta Foods, LLC TWC Account No. 02-064852-0) and changed to Café

---

Express, LLC (TWC Account No. 08-805031-2) due to a corporate restructuring, which resulted in no change of control."[5]

36.    Wendy's International LLC is also liable, not only for its own conduct, but the conduct of its predecessors Augusta and Café Express because Wendy's ratified the conduct of Augusta, continued the wrongful conduct of Augusta and Café Express, was a participant in a joint enterprise with Augusta and Café Express, covered up the wrongdoing of Café Express and Augusta, participated in a civil conspiracy with Augusta and Café Express targeted at the Plaintiffs, continued to operate under the same d/b/a name as Augusta and Café Express had used, and engaged in individual and wrongful conduct targeted at the Plaintiffs.

37.    More specifically, Wendy's independently and voluntarily took on the obligations of Café Express and Augusta in continuing to deduct $25.00 or more a week from Plaintiffs' paychecks and continued to represent the Plaintiffs through the use of their in house attorneys and their outside counsel, the law firm Baker Donelson.  Again, as demonstrated above, Michelle Diaz, the HR director for Café Express, explained that the Texas Workforce Commission should treat Augusta Foods, Café Express and Wendy's equally in all acts related to the 245(i) program.  By filing this document with the Texas Workforce Commission, Wendy's voluntarily assumed the prior actions of Augusta Foods and Café Express.

38.    In addition, Plaintiffs have attached as Exhibit "D" a letter from Dan White of Baker, Donelson to Santiago Ramirez dated October 31, 2005.  Mr. White was retained by Wendy's as outside counsel in matters related to immigration.  When Mr.

---

[5] *See* letter from E. Michelle Bohreer to Alien Labor Certification, dated November 20, 2004, attached as Exhibit "C."

White drafted this letter he was acting on behalf of Wendy's.  In this letter, Mr. White states that:

> "We are writing to confirm our law firm is handling the pending labor certification application filed by Café Express on your behalf."

Additionally, there is an October 31, 2005 letter from Dan White of Baker, Donelson to the employment and training administrator for Café Express in Dallas concerning these Applications which is attached as Exhibit "E."  In that letter, Mr. White states:

> "Dear Madam or Sir:  Enclosed please find G-28 attorney representation form for the above-referenced individuals. Should you have questions, please contact our office."

Numerous similar letters exist that were sent to the other Plaintiffs.  These letters clearly establish that Wendy's took on the obligations from Café Express, that Wendy's attorneys regularly consulted with Wendy's and Café Express executives prior to making decisions and that Augusta Foods, Café Express and Wendy's involvement was seamless and continuous.  Each entity ratified and continued the actions of the other – including covering up the actions of the predecessor entity.

39.    Additionally, yet another basis for successor liability regarding Wendy's is the seamless continuation of the business of its predecessor.  Wendy's continued to use the same executives, managers, staff, equipment, vendors, signage, business name etc. to continue to run the same restaurants in the same manner.  By letter dated November 29, 2004 from Boyar & Miller to Enterject, Inc. regarding the Applications, Boyar & Miller stated:

> "Please let this letter confirm that the name of the sponsoring employee was initially Augusta Foods, LLC (TWC Account No. 02-064852-0) and changed to Café Express, LLC (TWC Account No. 08-805031-2) due to a

corporate restructuring, which resulted in no change in control".

This letter is attached as Exhibit "F."

Wendy's 1) committed affirmative acts which caused damages to Plaintiffs; 2) voluntarily assumed obligations from Café Express and Augusta; and 3) is vicariously liable for the acts of Augusta and Café Express as a matter of law under theories of successor liability and joint enterprise.

40.     All in all, the Restaurant Defendants chose to take on the obligation of making sure that any and all of its employees that qualified under the LIFE Act Amendments of 2000 applied for permanent residency.  The Restaurant Defendants stood to benefit if the Plaintiffs obtained amnesty under the program.  This would allow each of the Restaurant Defendants to move from their long held position of employing illegal workers to a position of operating legally.  As an added benefit, from May 2001 until September 2006 the Restaurant Defendants were able to keep a stable work force in an industry with a historically high turnover rate, and pay the Plaintiffs less than they paid similarly situated employees who were legally working.  The Restaurant Defendants, with the aid of the Attorney Defendants, were able to do this by convincing the Plaintiffs that their Applications were timely filed and that if  they quit working for the Restaurant Defendants they would either have their Applications terminated or be forced to find a new employer willing to sponsor the undocumented worker.  The Restaurant Defendants knew that these options would force the Plaintiffs to work for almost any pay and under any conditions for a long period of time.

### C.    Additional Facts Related to Legal Malpractice By The Attorney Defendants.

41.    To accomplish the Application filing and legal process, the Restaurant Defendants arranged for the Attorney Defendants to represent the Plaintiffs and to satisfy the filing requirements and ongoing procedures required by the INS and the LIFE Act Amendments of 2000.   The Restaurant Defendants worked closely with the Attorney Defendants to provide Plaintiffs with the proper paperwork, instructions and directions on how to complete the paperwork, and generally oversaw the process.   In order to participate in the program the Restaurant Defendants and the Attorney Defendants required that $25.00 or more a week be deducted from the Plaintiffs' paychecks for the costs and legal fees involved in the *Application* process.  The weekly deductions began in May 2001 and continued through approximately December 2005.[6]   To date, Plaintiffs have not been told how the money was used.  No explanation has been given.  Some of the Attorney Defendants sent additional bills directly to the Plaintiffs and received additional payment directly from some of the Plaintiffs.[7]

42.    The Attorney Defendants accepted the attorney/client representation of the Plaintiffs.   They accepted legal fees in exchange for applying for and prosecuting the permanent residency *Applications* for the Plaintiffs.   The first step of this process was to promptly, properly and timely file the *Applications* for the Plaintiffs with the Department of Labor.

43.    Defendant Attorney Michelle Bohreer and Defendant Boyar & Miller filed I-140 forms with the Department of Justice.  This was not the correct procedure under the

---

[6] There were several months in 2003 that the weekly deductions were not taken out but they were sporadic and for the vast majority of the 4 ½ years the weekly $25.00 deductions were made from the Plaintiffs' paychecks.
[7] *See* Exhibits "G" & "H," attached hereto.

LIFE Act and the INS rules.  I-140's cannot be filed with the Department of Justice until the Department of Labor issues a Labor Certificate.  Of course, the Department of Justice denied the Plaintiffs' I-140 applications.

44.     The Defendant Attorneys also completed the *Applications* and filed the *Applications* with the Department of Labor.  This was the correct procedure under the INS rules and the LIFE Act.  However, the *Applications* for the Category I and II Plaintiffs were filed after the April 30, 2001 deadline.

45.     Any Applicant whose *Application* was not filed by April 30, 2001 does not qualify for the benefits of the LIFE Act Amendment.  The failure to timely file is a complete bar to any undocumented worker to legalize inside the United States under the LIFE Act.  There is no remedy in either law or equity to correct this failure unless the Applicant is grandfathered by another petition filed before the sunset date of April 30, 2001, except the remedies requested in this suit.

**D.     The Cover Up:  May 2001 – July 2006.**

46.     Despite knowledge by the Attorney Defendants and the Restaurant Defendants (either through direct knowledge or information that was known or should have been known to the Defendants) the Defendants failed to inform the Plaintiffs that the deadline had been missed.  Nor did they inform the Plaintiffs that their status in this country was illegal and that they would not qualify under the LIFE Act Amendments of 2000 to become permanent residents.  Instead, the Attorney Defendants and Restaurant Defendants aggressively and expressly took steps to assure the duped immigrants that their *Applications* were being processed and that everything was taken care of and they

had nothing to worry about.[8]   All of these letters from the Defendants were sent at various times after the *Application* filing deadline was missed.   The letters portray that everything was on track and in good order.   In addition, periodically the Plaintiffs' managers and supervisors would hold both formal and informal meetings with the Plaintiffs.   In each of these meetings from 2001 until the Plaintiffs were advised they would be terminated in the summer/fall of 2006 the Plaintiffs were assured that the *Applications* were pending and would be eventually approved.   In addition, periodically attorneys and attorney representatives from the Attorney Defendants' law firms would meet with the Plaintiffs.   The Attorney Defendants or their representatives gave similar assurances at each of these meetings.

47.     To compound the lies and misinformation funneled by the Attorney Defendants and Restaurant Defendants to the Plaintiffs, the Defendants continued to deduct $25.00 or more a week from the duped Plaintiffs.

48.     In addition, the Restaurant Defendants continued to employ the Plaintiffs despite the fact that employing the Plaintiffs was in clear violation of U.S. law, especially after the Defendants knew or should have known that the *Applications* for labor certifications with the Department of Labor were late filed and dead on arrival.

**E.       The Gig is Up, and the Plaintiffs Are Fired.**

49.     After nearly five years, the Defendants decided their actions were wrong and illegal.   However, even then, they continued taking the Plaintiffs' money.   Please see letter attached hereto as Exhibit "H" and incorporated by reference.

---

[8] Please see letters attached hereto and incorporated herein as Exhibits "I" – "L."

50.     The Restaurant Defendants eventually sent a letter to the Plaintiffs, on or about July 7, 2006, informing them for the first time that their *Applications* could not be successfully completed.[9]   The Plaintiffs were told that unless they could prove that their *Application* was filed on or before April 30, 2001 they would be fired on September 15, 2006.

51.     This letter came as a shock to the Plaintiff.   On one day the Plaintiffs believed that they had a secure job position, believed they were permanent residents of the United States (or soon would be), knew that they had paid thousands of dollars in legal fees and related costs to the Defendants, and were confident that their future, careers, family and legal presence in the United States was secure and would continue. Except for the money taken from the Plaintiffs, none of these beliefs were true.   The Plaintiffs were simply duped by lawyers (the Attorney Defendants) and their employer (Augusta, Café Express and Wendy's) into believing this.   Not only were the Plaintiffs done a grave disservice which cannot be remedied (but for damages prayed for in this lawsuit), the money taken out of their paychecks for the last several years can be characterized as nothing less than theft.   The fact that the money still has not been returned is unconscionable.

**F.     Wendy's Retaliated Against The Plaintiffs Post-Litigation.**

52.     Wendy's, through its counsel, took steps to further harm the Plaintiffs after this litigation was filed and/or after it knew that litigation was likely.   Wendy's affirmatively filed paperwork with the INS withdrawing the Plaintiffs' Applications. This was done without consulting with the Plaintiffs.   The Defendants have argued that the Applications might still be approved.   If it is true that a late-filed Application may

---

[9] Please see Exhibit "A".

still have been approved (which is denied), then Wendy's actions, through counsel, prevented any possibility of the Plaintiffs obtaining permanent residency.  In any event, such action was a breach of the duties owed to the Plaintiffs because they were not consulted and did not agree to have their Applications withdrawn.

53.     Damages in this lawsuit must include the money stolen from the Plaintiff's paychecks each week, plus money they would have earned but for the termination. But damages must also include sufficient funds to compensate the Plaintiffs for the loss of permanent residency, and the likelihood that they would have eventually qualified to apply for citizenship in the United States.  Damages must be sufficient to compensate the Plaintiffs for what that loss means to them and their family.  Under the clear and strict laws relating to immigration status, there is very little likelihood that the Plaintiff will ever obtain permanent residency or U.S. citizenship because of the Defendants' failures. At best, the Plaintiff may expect to be deported from the United States and must begin the application process anew, complete with the long delays and improbabilities that accompany this process.  The Plaintiffs paid their ticket to Ellis Island, only to pull up to the dock, have the ticket snatched from their hands, and endure the shame and financial loss of being sent back from where they came, with no hope of ever becoming a citizen or permanent resident of the United States.

## ESTOPPEL AND TOLLING STATUTE OF LIMITATIONS

54.     Defendants are estopped from asserting any statute of limitations defense to the claims alleged herein by virtue of their acts of failing to disclose material facts,

suppressing their wrongful conduct, and taking express, regular, knowing and intentional acts of deception and misrepresentation towards the Plaintiff.

## JOINT AND VICARIOUS LIABILITY AMONG AND BETWEEN
## THE DEFENDANTS

55.     Plaintiffs reallege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

56.     Plaintiffs specifically incorporate paragraphs 32 through 40 and 71 through 109.

### A.     Joint Enterprise

57.     At all times the employee Plaintiffs worked for the same chain of restaurants.  These restaurants were at all times known to the public as "Café Express."

58.     During the period of time pertinent to this suit, the restaurants were always operated in the same basic way, used the same concept, used the same branding, used the same d/b/a, used the same menu, and held itself out to the public as being the same entity.

59.     During this period of time there was no change to the management, supervisors, HR personnel or day-to-day running of the business despite the fact that the controlling entities name changed and the percentage of ownership changed over the course of time.

60.     When personnel changes in positions related to the immigration filings occurred over the course of time, each successor person picked up, continued and ratified the actions of his or her predecessor.  Most of the decision makers relevant to the transaction at issue did not change over the period of time from early 2001 through 2006 despite the name change and change in ownership percentages.

61.     There was an agreement between the Augusta Foods, Wendy's and Café Express to engage in a joint enterprise in which illegal workers would be employed in order to keep costs down and profits high.

62.     There was an  agreement between the Augusta Foods, Wendy's and Café Express to engage in a joint enterprise to sponsor the illegal workers and assist them in qualifying under the LIFE Act in order to reap benefits for each of the Restaurant Defendants.

63.     There was an  agreement between the Augusta Foods, Wendy's and Café Express to take affirmative steps to take steps to convince the illegal workers not to leave the employ of the Restaurant Defendants during the period from early 2001 through the middle of 2006 so that the Restaurant Defendants would gain the benefit of a captured workforce.  This included the benefit that each of the Restaurant Defendants would save money in not having to re-train its employees, not paying the 245(i) applicants as much as similarly situated employees who were not in the program, and other benefits that come with the establishment of a large indentured servant workforce.

64.     Once the deadline for filing under the LIFE Act was missed, there was an agreement between Augusta Foods, Wendy's and Café Express to take steps to cover up the fact that the deadline had been missed.

65.     At each step in the process the Restaurant Defendants employed attorneys to assist with this joint enterprise.  The Attorney Defendants participated in the joint enterprise described herein and received compensation and profit for participating in the joint enterprise.

66.     A common purpose was to be carried out by the enterprise.  This common purpose included a purpose to increase the value and profits of a chain of restaurants known to the public as "Café Express" by creating a work force that was forced or persuaded to continue employment with Café Express for reasons beyond the usual benefits of employment.

67.     Over the period of time from 2001 through 2006 each of the Defendants agreed to the joint enterprise described herein, participated in the joint enterprise, ratified the prior conduct of the participants in the joint enterprise and took steps to continue the common purpose of the joint enterprise.

68.     Augusta Foods, Wendy's, Café Express and the Attorney Defendants had a community of pecuniary interest in the common purpose of the joint enterprise.  Each hoped to and actually did profit from the common purpose.  The value of the Café Express chain increase, employment costs were reduced, and turnover rates were lower than if the joint enterprise and common purpose had not been in place.

69.     Augusta Foods, Wendy's, Café Express and the Attorney Defendants had an equal right and even a duty to direct and control the joint enterprise.  At any time any of the participants in the joint enterprise could have told the Plaintiffs that the deadline had been missed.  This would have put an end to the joint enterprise.  Each participant - Augusta Foods, Wendy's, Café Express and the Attorney Defendants – and all of their members and directors – failed to do this.

70.     The Plaintiffs were injured by the joint enterprise.


**B.     Successor and Predecessor Liability**

71.     Plaintiffs reallege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

72.     Plaintiffs specifically incorporate paragraphs 32 through 40 and 57 through 109.

73.     The relationship between Augusta Foods and Café Express is nothing more than a mere name change.  The name change does not release Café Express from the liability incurred by Augusta Foods set forth herein.  When Augusta Foods changed its name to Café Express it maintained the exact assets, restaurants, personnel, and workforce that Augusta Foods maintained.  As such, as a successor, Café Express is liable for all of the acts of Augusta Foods.  As a predecessor, Augusta Foods is liable for all of the acts of Café Express.

74.     Wendy's gained an interest in Café Express in 2004.  Wendy's continued the same chain of restaurants in the same manner with the same operational control.  Wendy's also ratified and continued the conduct complained of herein.  Wendy's bought Café Express and Augusta's assets and liabilities.  As such, Wendy's is liable for its own acts as well as the acts of Augusta and Café Express.


**C.     Aiding and Abetting Liability:   Joint Liability Between All Defendants**

75.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

76.     Plaintiffs specifically incorporate paragraphs 32 through 40 and 57 through 109.

77.     When a defendant gives assistance or encouragement to a person committing a tort, and the assistance or encouragement is a substantial factor in causing the tort, the defendant is considered a tortfeasor and is responsible for the consequences of the tort.[10]   The Texas Supreme Court long ago recognized aiding and abetting as a theory for imposing joint liability.[11]   Since at least 1930, Texas courts have assumed a defendant can be liable for a tort under a theory of aiding and abetting.[12]   Each of the Defendants aided and abetted the others in the commission of each of the torts asserted in this complaint.

78.     Each of the Defendants had knowledge of the other's conduct.  All of the Defendants had personnel that held themselves out as having competent knowledge of the human resources issues and immigration issues asserted in this complaint.  All of the Defendants knew or should have known the deadline for filing the Application for Labor Certification with the Department of Labor.  All of the Defendants knew or should have known that the deadline had been missed for the filing of the Category I and II Plaintiffs' Applications.  Each of the Defendants aided and abetted the other to cover up the fact that the deadline was missed.  Each of the Defendants wanted to ensure and took steps to ensure that the Café Express chain of restaurants had a captured work force that would continue working for the Café Express chain for a long period of time for reasons unrelated to the Plaintiffs employment.  Each of the Defendants knew or should have known that the Applications for the Category I and II Plaintiffs were dead on arrival.

---

[10] Restatement (2d) of Torts §876(b) cmt. D (1979).
[11] *See Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509, 514 (Tex.1942).
[12] *See, e.g., King v. Shawver,* 30 S.W.2d 930, 931 (Tex. App. – Fort Worth 1930, no writ)(case submitted to jury on theory of aiding and abetting).

79.     Each of the Defendants had the intent to assist the primary actor in committing the tort.   All of the Defendants stood to gain – and did gain – by the commission of the torts asserted in this action.

80.     Each of the Defendants gave the primary actor assistance or encouragement.   Without the help of each of the Defendants at various steps in the process from 2001 to 2006 the injury to the Plaintiffs would not have occurred or been as great.   For example, if any of the Attorney Defendants had alerted the Plaintiffs at any time that the deadline had been missed, then the benefits of a captured workforce would have disappeared.   It took all of the Defendants working in concert to gain the benefits desired by the Café Express chain of restaurants.

81.     The Defendants' acts in aiding and abetting each other in committing these torts was a substantial factor in completing the torts.


**D.     Assisting-or-Encouraging:  Joint Liability Between All Defendants**

82.     Plaintiffs reallege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

83.     Plaintiffs specifically incorporate paragraphs 32 through 40 and 57 through 109.

84.     When a defendant gives assistance or encouragement to a person committing a tort, and the assistance or encouragement is a substantial factor in causing the tort, the defendant is considered a tortfeasor and is responsible for the consequences of the tort.[13]   Each of the Defendants aided and abetted the others in the commission of

---

[13] Restatement (2d) of Torts §876(b) cmt. D (1979).

each of the torts asserted in this complaint.  Each of the Defendants assisted or encouraged the others in the commission of each of the torts asserted in this complaint.

85.     Each of the Defendants had knowledge of the other's conduct.  All of the Defendants had personnel that held themselves out as having competent knowledge of the human resources issues and immigration issues asserted in this complaint.  All of the Defendants knew or should have known the deadline for filing the Application for Labor Certification with the Department of Labor.  All of the Defendants knew or should have known that the deadline had been missed for the filing of the Category I and II Plaintiffs' Applications.  Each of the Defendants assisted and encouraged the other to cover up the fact that the deadline was missed.  Each of the Defendants wanted and took steps to ensure that the Café Express chain of restaurants had a captured work force that would continue working for the Café Express chain for a long period of time for reasons unrelated to the Plaintiffs employment.  Each of the Defendants knew or should have known that the Applications for the Category I and II Plaintiffs were dead on arrival.

86.     Each of the Defendants had the intent to assist the primary actor in committing the tort.  All of the Defendants stood to gain – and did gain – by the commission of the torts asserted in this action.

87.     Each of the Defendants gave the primary actor assistance or encouragement.  Without the help of each of the Defendants at various steps in the process from 2001 to 2006 the injury to the Plaintiffs would not have occurred or been as great.  For example, if any of the Attorney Defendants had alerted the Plaintiffs at any time that the deadline had been missed, then the benefits of a captured workforce would

have disappeared.  It took all of the Defendants working in concert to gain the benefits desired by the Café Express chain of restaurants.

88.     The Defendants' assistance or encouragement with each other in committing these torts was a substantial factor in completing the torts.


**E.     Assisting-and-Participating:  Joint Liability Between All Defendants**

89.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

90.     Plaintiffs specifically incorporate paragraphs 32 through 40 and 57 through 109.

91.     Assisting and participating has long been recognized as a theory for imposing joint liability in Texas.[14]

92.     Each of the Defendants activities described herein accomplished a tortuous result.

93.     Each of the Defendants provided substantial assistance to the other Defendants in accomplishing the tortious result.

94.     Each of the Defendant's own conduct, separate from the other's conduct, was a breach of duty to the Plaintiff.  Each of the Attorney Defendants owed a duty of the highest degree to the Plaintiffs to act as a reasonable attorney in an attorney-client relationship.  Each of the Restaurant Defendants had a duty to the Plaintiffs to fulfill the procedures required by the LIFE Act amendment in a competent manner, and to act as a reasonable employer in keeping the Plaintiffs informed, to be truthful and to otherwise

---

[14] *See City of Fort Worth v. Pippen,* (439 S.W.2d 660, 665 (Tex.1969)( when defendant knowingly participated in another's breach of fiduciary duty to plaintiff, defendant is a joint tortfeasor).

act as a reasonable employer.   Each of the Defendants breached their duties to the Plaintiffs.

95.     Each of the Defendants' participation was a substantial factor in causing the torts and breaches of fiduciary duties alleged in this complaint.

## F.     Concert of Action:  Joint Liability Among All Defendants

96.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

97.     Plaintiffs specifically incorporate paragraphs 32 through 40 and 57 through 109.

98.     Concert of action is defined as an action that was planned, arranged, and agreed on by parties acting together to further some scheme or cause, making all involved liable for the actions of one another.[15]   Under this theory of liability, those who pursue a common plan or design to commit a tortuous act and actively participate in it are equally liable.[16]

99.     Some of the Defendants' acts alleged herein were intentional or grossly negligent.   This includes the allegations explained and asserted under the headings fraudulent inducement to contract, conversion, breach of fiduciary duty, fraud, and intentional misrepresentation.

100.   For each of the acts described herein that were intentional or grossly negligent, Plaintiffs assert joint liability among all of the Defendants for each of the Defendants acts under a theory of concert of action.

---

[15] *Black's Law Dictionary*  307 (8th Ed. 2004).
[16] *See Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 69 (Tex. 1989).

101.    The torts alleged herein included acts that were highly dangerous, deviant or were an antisocial group activity likely to cause certain harm to a large number of people.  This includes all acts taking in order to ensure that the Café Express chain of restaurants maintained a captured and indentured workforce for a long period of time.

102.    Each of the Defendants agreed, either explicitly or tacitly, to cooperate in a particular plan or to accomplish a particular result.

103.    Each of the Defendant's own conduct was tortious.

104.    The tortious acts of the Defendants acting in concert caused the Plaintiffs' injuries.


**K.      Civil Conspiracy:  Joint Liability Among All Defendants**

105.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.  Plaintiffs specifically incorporate paragraphs 32 through 40 and 57 through 109.

106.    Augusta Foods, Café Express, Wendy's, and the Attorney Defendants were members of a combination of persons.   The object of the combination was to accomplish an unlawful purpose and to accomplish a lawful purpose by unlawful means.

107.    Augusta Foods, Café Express, Wendy's, and the Attorney Defendants conspired and combined to do the following unlawful acts or to accomplish the following lawful purposes by unlawful means:

        a.      The Defendants conspired to cause money to be withheld from the Plaintiffs' paychecks for services that provided no benefit to the Plaintiffs;

b. The Defendants conspired to cause money to be paid in fees and costs to the Attorney Defendants for services that provided no benefit to the Plaintiffs;

c. The Defendants conspired to commit fraud set forth set forth and described in detail herein;

d. The Defendants conspired to engage in the breach of fiduciary duty set forth and described herein;

e. The Defendants conspired to engage in the intentional acts set forth herein;

f. Once the Defendants learned that the Application had not been timely filed, the Defendants conspired to cover up and keep this knowledge from the Plaintiffs so that the Plaintiffs would continue to work despite the wages and conditions.

108. The members of this conspiracy had a meeting of the minds on the object or course of action set forth herein.

109. The plaintiff suffered injury as a proximate result of the wrongful act.

## CAUSES OF ACTION

### A. Count One – Legal Malpractice

110. Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

111. The Attorney Defendants had an attorney/client relationship with the Plaintiffs because: (1) the Plaintiffs were their clients; (2) the Attorney Defendants agreed to take on the representation; (3) the Attorney Defendants agreed to take whatever legal action necessary to properly and timely submit the *Applications* on behalf of the

Plaintiffs; (4) the Attorney Defendants charged the Plaintiffs for performance of legal services; (5) the Attorney Defendants were paid for this legal service (6) the Plaintiffs reasonably believed that the Attorney Defendants were working on their behalf; (7) the Plaintiffs periodically received updates from the Attorney Defendants.   Further, the Attorney Defendants represented themselves as the Plaintiffs' attorney.   There is no doubt that the  Attorney Defendants engaged in the practice of law on behalf of the Plaintiffs in taking steps to file the *Applications* (including signing the *Applications* attorney for the Plaintiffs), but failed to file the *Applications* timely.   Failure to properly and timely file the *Applications* resulted in a breach of the duty that the Attorney Defendants owed to the Plaintiffs.   In addition, failure to timely inform the Plaintiffs of the error exacerbated the damages.   In addition, continuing to bill the Plaintiffs after the missed deadline exacerbated the damages.   The Attorney Defendants' actions described throughout this complaint were below the standard of care owed by an attorney to his or her clients.   These breaches proximately caused the Plaintiff injuries, and substantial damages were incurred.

### B.    Count Two – Breach of Contract – Legal Malpractice

112.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

113.    The Attorney Defendants entered into a contractual relationship to provide legal services to the Plaintiffs.   The Attorney Defendants breached this contract by failing to properly and timely supply competent legal services to the Plaintiffs.   The failure to

perform competently the services required by the Plaintiff proximately resulted in substantial damages to the Plaintiff.

### C.    Count Three – Breach of Contract – Restaurant Defendants

114.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

115.    The Restaurant Defendants entered into a contract with the Plaintiff to oversee and process the correct, accurate and timely filing of the *Applications* on behalf of the Plaintiffs.  This agreement began when the Restaurant Defendants, the owners of the Café Express chain of restaurants, initially offered and promised to assist the Plaintiffs in the filing and prosecuting requirements under the LIFE Act.  These promises and offers were made repeatedly by each of the Restaurant Defendants and attorneys working on behalf of the Restaurant Defendants from 2001 through 2006.  The Plaintiffs accepted the Restaurant Defendants' offers and promises and expected the obligations of this agreement to be performed by the Restaurant Defendants.

116.    This began when Augusta Foods offered, and the Plaintiffs accepted the offer, for Augusta Foods to serve as the employer sponsor for the Plaintiff's Application and to take all necessary steps in the filing and prosecuting of the immigration forms.  In addition, Augusta Foods offered to find counsel, provide legal advice, present the necessary forms and be a source of communication to the Plaintiffs on the status of the Application.  Augusta Foods received money and other benefits because of this contract.  Augusta Foods breached the contract in every way.  Augusta Foods failed to make sure the Applications were timely filed, failed to provide sound legal advice, failed to

promptly and accurately inform the Plaintiffs of the status of the Application and engaged in wrongdoing directed at the Plaintiffs. Augusta Foods breached the contract with the Plaintiffs and this breach injured the Plaintiffs.

117.    When Augusta Foods changed its name to Café Express, Café Express stepped into and accepted the contractual obligations of Augusta Foods. Café Express also breached its contract to the Plaintiffs by continuing to deduct money from the Plaintiffs paycheck, continuing to provide improper advice, continuing to cover up the failure to file the Application timely and other acts in direct contradiction to the obligations Café Express agreed to accept. Café Express breached the contract with the Plaintiffs and this breach injured the Plaintiffs.

118.    When Wendy's bought a stake in Café Express, Wendy's stepped into and accepted the contractual obligations of Augusta Foods. Wendy's also breached its contract to the Plaintiffs by continuing to deduct money from the Plaintiffs paycheck, continuing to provide improper advice, continuing to cover up the failure to file the Application timely and other acts in direct contradiction to the obligations Wendy's agreed to accept. Wendy's breached the contract with the Plaintiffs and this breach injured the Plaintiffs.

119.    The Restaurant Defendants deducted $25.00 or more per week from Plaintiffs' paychecks over a period of approximately five years. The Restaurant Defendants' HR personnel regularly communicated in writing with the Plaintiffs, and repeatedly assured the Plaintiffs that their *Applications* were correctly and timely filed and that they were taking steps (and later claimed that they had completed the steps

necessary) to accurately, competently and timely file the *Applications*.[17]  The Restaurant Defendants offered to fulfill all of these duties.  The Plaintiffs accepted the offer and completed all obligations on their part including paying the costs and fess related to the prosecution of the immigration paperwork, attending meetings related to the 245(i) program and completing the paperwork requested by the Restaurant Defendants.  The Restaurant Defendants breached this contract by failing to provide the services they agreed to provide.  This breach proximately led to the substantial damages incurred by the Plaintiff.

120.    The Attorney Defendants had an attorney client relationship with the Plaintiffs.  The Attorney Defendants offered to provide sound legal advice and take all procedural steps necessary to file the Plaintiff's Application.  The Attorney Defendants breached this contract by failing to timely file the Application, failing to provide correct legal advice from 2001 through 2006, failing to keep the Plaintiff informed on the correct status of the Application and continuing to bill and accept fees for representing the Plaintiff.   The Plaintiffs were injured because of the Attorney Defendants conduct.

### D.  Count Four:  Fraudulent Inducement to Contract

121.    Plaintiffs re-allege and incorporates by reference all paragraphs contained in this petition, as if fully set forth herein.

122.    Defendants Augusta Foods and Defendant Boyar & Miller and Defendant Michelle Bohreer induced Plaintiffs to enter into the contract made the basis of this litigation upon representations that they could competently prosecute the Plaintiffs

---

[17]   Please see Exhibits "I" – "L."

Application. These representations were later ratified by the conduct and representations of Augusta Foods, Café Express, Wendy's and the other Attorney Defendants.

123. When Defendants made the foregoing representations, they (a) knew the representations were false, or (b) made the representations recklessly, as a positive assertion, and without knowledge of their truth. Defendants made the representations with the intent that the Plaintiffs act on them. Plaintiffs relied upon these representations in entering into the contract.

124. As a direct and proximate cause of Defendants' conduct, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court and request an order from this Court awarding Plaintiffs all damages allowed by law.

125. Plaintiffs further seek exemplary damages and treble damages in an amount to be determined by the trier of fact.

### E. Count Five – Negligence

126. Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

127. The Defendants accepted the duty to competently, correctly and timely file and process the Plaintiffs' *Applications.* After accepting this duty and taking steps to complete this duty, the Defendants negligently failed to timely complete the task, and engaged in other acts that breached the duties that they owed to the Plaintiffs. This breach proximately led to the substantial damages incurred by the Plaintiff. These damages go far beyond the $25.00 or more a week that was deducted from the Plaintiff's paycheck. For instance, the damages include an amount necessary to compensate

Plaintiffs for the fact they will not have the opportunity to become a permanent resident and ultimately a United States citizen. Plaintiffs have also suffered mental anguish as a result of Defendants' negligence.

128. The Defendants were also negligent in the following:

a. Failing to correctly, competently and promptly inform the Plaintiffs of the status of the immigration process after affirmatively accepting this duty;

b. Withholding funds from the Plaintiffs paychecks;

c. Sending correspondence to the Plaintiffs with inaccurate information related to the immigration process and the individual Plaintiffs' Applications status;

d. Filing incorrect paperwork with the Department of Justice;

e. Incorrectly prosecuting the relief allowed by the LIFE Act Amendment;

f. Failing to correctly complete the forms necessary for relief under the 245(i) program;

g. Failing to file the Applications with the Department of Labor on or before April 30, 2001.

h. Conducting meetings from 2001 to 2006 in which incorrect information was given to the Plaintiffs;

i. Withdrawing the Plaintiffs Applications from consideration; and,

j. Other acts of negligence that will be shown at the trial of this matter.

F.     <u>Count Six – Negligent Misrepresentation</u>

129.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

130.    The Defendants regularly communicated with the Plaintiffs even after they knew or should have known that the filing deadline had been missed.  In both written and oral communications,[18] the Defendants regularly assured the Plaintiffs that their *Applications* had been filed timely, and that the *Applications* were being processed and in due course the Plaintiffs would be permanent residents.  These actions took place after the Defendants knew or should have known that the deadline had been missed.  These acts of negligent misrepresentation caused substantial damages to the Plaintiffs.  Plaintiffs have also suffered mental anguish as a result of Defendants' negligent misrepresentations.

G.     <u>Count Seven – Unjust Enrichment, Restitution</u>

131.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

132.    The Defendants continued to collect fees by deducting money from the Plaintiffs' paychecks, even after the Defendants knew or should have known that the *Applications* were late-filed.  This was done by automatic deductions of $25.00 or more per week for several years.  By receiving these funds, the Defendants were unjustly enriched and the Plaintiff was substantially damaged.

133.    Augusta Foods began deducting money from the Plaintiffs paychecks in 2001.  This continued without interruption when August Foods changed its name to Café

---

[18]  Please see Exhibits "I" – "L."

Express.  The Plaintiffs were told that this money was to be used for legal services, costs and fees associated with the filing of immigration papers, retaining counsel and other costs related to the filing.  The money belonged to the Plaintiffs.  The money was kept by Augusta Foods.  August Foods was enriched by these automatic deductions from the Plaintiffs paychecks.  The Plaintiffs were damaged because they were forced to work without pay to cover these costs.  The Plaintiffs received no value for the money because the Applications were late filed.  As such, Augusta Foods was unjustly enriched to the Plaintiffs detriment.

134.    Café Express continued deducting money from the Plaintiffs paychecks when Augusta Foods changed its name to Café Express.  This continued without interruption when Café Express sold a portion of its business to Wendy's.  The Plaintiffs were told that this money was to be used for legal services, costs and fees associated with the filing of immigration papers, retaining counsel and other costs related to the filing.  The money belonged to the Plaintiffs.  The money was kept by Café Express.  Café Express was enriched by these automatic deductions from the Plaintiffs paychecks.  The Plaintiffs were damaged because they were forced to work without pay to cover these costs.  The Plaintiffs received no value for the money because the Applications were late filed.  As such, Café Express was unjustly enriched to the Plaintiffs detriment.

135.    Wendy's continued deducting money from the Plaintiffs' paychecks when it bought a stake in Café Express.  This continued until the Plaintiffs were terminated in September 2006.  The Plaintiffs were told that this money was to be used for legal services, costs and fees associated with the filing of immigration papers, retaining counsel and other costs related to the filing.  The money belonged to the Plaintiffs.  The

money was kept by Wendy's.  Wendy's was enriched by these automatic deductions from the Plaintiffs' paychecks.  The Plaintiffs were damaged because they were forced to work without pay to cover these costs.  The Plaintiffs received no value for the money because the Applications were late filed.  As such, Wendy's was unjustly enriched to the Plaintiffs detriment.

136.    The Restaurant Defendants took steps to establish and maintain a captured work force by threatening the Plaintiffs or making it difficult for Plaintiffs to leave employment with the Café Express chain of restaurants for fear that their Application would be withdrawn.  The Restaurant Defendants who owned and operated the Café Express chain of restaurants benefited tremendously from this indentured work force.  The Restaurant Defendants were able to establish and maintain a work force that would not leave regardless of the conditions, and would work for less wages than similarly situated employees working for the Café Express chain of restaurants.  Because of this the Restaurant Defendants were enriched.  The Café Express chain of restaurants was more profitable and more valuable than it otherwise would have been.  This enrichment came at a cost and to the detriment of the Plaintiffs.

137.    The Attorney Defendants billed the Plaintiffs both directly and indirectly.  The Plaintiffs paid the Attorney Defendants for costs and fees related to the filing of the Application.  Because the Applications were not filed timely, the Plaintiffs received nothing of value from the Attorney Defendants.  The money belonged to the Plaintiffs.  The money was kept by the Attorney Defendants.  The Attorney Defendants were enriched by the Plaintiffs.  The Plaintiffs were injured.  As such, the Attorney Defendants were unjustly enriched to the Plaintiffs detriment.

**H.      Count Eight – Conversion**

138.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

139.    Defendants stole and collected money from the Plaintiffs' paychecks on a weekly basis beginning in 2001 and continuing through 2006, long after they knew or should have known that the *Applications* were not filed timely.  By doing so, funds that belonged to the Plaintiffs were wrongfully converted for the use of the Defendants.

140.    Defendant Augusta Foods and its attorneys first arranged for the money to be deducted.  Augusta continued to deduct the money each week from the Plaintiff's paycheck until Augusta Foods changed its name to Café Express.  This money rightfully belonged to the Plaintiff.  The money has never been returned by Augusta Foods.

141.    After Defendant Augusta Foods changed its name to Café Express, Café Express and its attorneys continued to withhold money from the Plaintiffs paycheck each week.  This money rightfully belonged to the Plaintiff.  The money has never been returned by Café Express.

142.    After Defendant Wendy's bought a stake in Café Express, Defendant Wendy's and its attorneys continued to withhold money from the Plaintiffs' paychecks each week.  This money rightfully belonged to the Plaintiffs.  The money has never been returned by Wendy's.

143.    The Attorney Defendants instructed Augusta Foods, Café Express and Wendy's to make the wrongful deductions from the Plaintiffs paychecks.  The Attorney Defendants received and are still holding at least some of the money.  In addition, the

Attorney Defendants wrongfully billed the Plaintiffs and kept money paid by the Plaintiffs, despite the fact that the Plaintiffs received no benefit from the Attorney Defendants.

144.    The acts set forth above and in other places throughout this petition constitute conversion on the part of the Attorney Defendants, Augusta, Café Express and Wendy's.


## I.      Count Nine – Breach of Fiduciary Duty

145.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

146.    There was a fiduciary relationship among the parties.  The Defendants breached this fiduciary duty.  This breach caused injury to the Plaintiffs and a benefit to the Defendants.

147.    An informal fiduciary duty arises from a moral, social, domestic, or purely personal relationship of trust and confidence.[19]  A fiduciary duty based on an informal relationship may arise when a high degree of trust, influence, or confidence has been acquired.[20]   In this case, a relationship of trust, confidence and dependence was developed because the Restaurant Defendants, including members of their human resources department and their managers and supervisors regularly gave the Plaintiffs' legal advice, advice on immigration matters and instructions on the consequences of leaving the employment of Café Express.  This was done in both formal and informal meetings held from 2001 through 2006, and in writing between the Restaurant

---

[19] *Meyer v. Cathey,* 167 S.W.3d 327, 331 (Tex.2005); *Schlumberger Tech. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997);
[20] *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.* 823 S.W.2d. 591, 594 (Tex. 1992).

Defendants and the Plaintiffs during the same period. The Plaintiffs depended on the Restaurant Defendants to give them accurate advice and counsel. The Restaurant Defendants encouraged and fostered a relationship of trust and confidence above and beyond a normal employer-employee relationship. This trust resulted in a fiduciary relationship. The Restaurant Defendants breached this fiduciary relationship and that breach injured the Plaintiffs. In addition, the Restaurant Defendants benefited by the Restaurant Defendants breach by capitalizing on a captured, low-paid work force over a long period of time.

148.    In addition, a fiduciary duty existed between the employees and the Restaurant Defendants because the Restaurant Defendants held the funds it deducted from the Plaintiffs' paychecks in trust for the Plaintiff. The Restaurant Defendants, as trustee, owed Plaintiff, among other things, a duty to disclose all material facts known to it that might affect the Plaintiffs' rights. This duty was breached and Plaintiffs suffered damages as a result.

149.    Defendants owe the highest duty to the Plaintiff and failed to fulfill this fiduciary duty by failing to, among other things, timely inform Plaintiffs of their *Application* status and continuing to deduct money from their paycheck. These actions were directly in breach of the fiduciary duties owed by the Defendants to the Plaintiffs.

150.    The Attorney Defendants had an attorney/client relationship with the Plaintiffs. Attorneys owe a fiduciary duty to their clients. The Attorney Defendants breached this duty by failing to timely file the Applications; failing to immediately inform the Plaintiffs of the correct status of the Applications; working in concert with the other Defendants to cover up their failure to timely file the Applications; writing, editing

and authorizing correspondence to the Plaintiffs that contained incorrect legal advice and recommendations; billing and accepting money from the Plaintiffs for legal services that had no value to the Plaintiffs; withholding information from the Plaintiffs about the status of their Applications; withdrawing the Plaintiffs' Applications without their consent; and other acts described herein. The Attorney Defendants benefited from these acts by receiving payment for legal services that had no value, and actually harmed, the Plaintiffs. The Attorney Defendants' breach of fiduciary duties injured the Plaintiff.

### J.      **Count Ten – Fraud**

151.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

152.    Defendants engaged in the following fraudulent acts:

a.      The Defendants engaged in fraud by intentionally and recklessly failing to tell the Plaintiffs that their Applications were not filed timely, even when the Defendants knew or should have known that the Applications were not filed timely and were dead-on-arrival. This omission was intentional and reckless.

b.      Defendants engaged in fraud by intentionally and recklessly covering up their failure to properly and timely file the *Applications*. Defendants took numerous steps to convince the Plaintiffs that their *Applications* were still pending, would be ultimately approved, and that they would receive permanent residence, long after the Defendants knew or should have known that the application deadline had been missed.

c.      The Defendants engaged in fraud by holding multiple meetings with the Plaintiffs from 2001 until 2006 and, at each meeting up until termination, telling the Plaintiffs that their Application was timely filed, that the Application was pending and would soon be approved, or words to that effect.  This information was not true at the time that the Defendants made the statements and held the meetings, and Defendants either knew this or should have known this at the time.   These acts were done intentionally and/or recklessly.

d.      The Defendants engaged in fraud by expressly instructing the managers at various Café Express stores to specifically tell the Plaintiffs that the Applications had been timely filed, that the Applications were pending and that the Applications would soon be approved.  This information was not true at the time that the Defendants made the statements and held the meetings, and Defendants either knew this or should have known this at the time.  These acts were done intentionally and recklessly.

e.      The Defendants engaged in fraud by drafting, authorizing, and sending correspondence to the Plaintiffs from 2001 to 2006 in which the Plaintiffs were repeatedly told that the Applications had been timely filed, that the Applications were pending and that the Applications would soon be approved.  This information was not true at the time that the Defendants made the statements and held the meetings, and Defendants either knew this or should have known this at the time.  These acts were done intentionally and/or recklessly.

f.      The Defendants engaged in fraud by deducting money each week from the Plaintiffs' paychecks when the Defendants knew or should have known that the Plaintiffs were receiving no value for the money that was being deducted.  This occurred

over the period of time from 2001 through 2006.  These acts were done intentionally and/or recklessly.

g.      The Defendants engaged in fraud by telling the Plaintiffs that they could not leave the employment of Café Express, and that if they did leave the employment of Café Express that their Applications would be dismissed.  The Defendants did this by authorizing, editing and sending written correspondence to the Plaintiffs.  The Defendants also did this through instructions given to the Plaintiffs' managers and supervisors with the express instruction that this information be passed to the Plaintiffs.  The Defendants also did this by setting up, facilitating and holding a series of meetings in which they were told by representatives of the Defendants that they could not leave the employment of Café Express or their Applications would be dismissed.  These acts occurred during the time period 2001 through 2006.  These acts were done intentionally and/or recklessly.

h.      The Defendants engaged in fraud by telling the Plaintiffs that they could not leave the employment of Café Express, and that if they did leave the employment of Café Express that their Applications would be dismissed unless they found another sponsor.  This was not a true statement as to the Category I and II Plaintiffs, because the Applications were not timely filed, so a new employer sponsor would not have been able to effectively sponsor the late-filed Application.  The Plaintiffs and the Defendants knew that finding a new employer who would be willing to sponsor an immigration application would be exceedingly difficult.  The Defendants did this by authorizing, editing and sending written correspondence to the Plaintiffs.  The Defendants also did this through instructions given to the Plaintiffs' managers and

supervisors with the express instruction that this information be passed to the Plaintiffs. The Defendants also did this by setting up, facilitating and holding a series of meetings in which they were told the same information by representatives of the Defendants.  These acts occurred during the time period 2001 through 2006.  These acts were done intentionally and/or recklessly.

        i.     The Defendants engaged in fraud by failing to return the money deducted each week from the Plaintiffs' paychecks when the Defendants knew or should have known that the Plaintiffs had received no value for the money that had been deducted.  This occurred over the period of time from 2001 through 2006.  These acts were done intentionally and/or recklessly.

        j.     Wendy's engaged in fraud by authorizing its counsel, Dan White, to withdraw pending Applications without the consent of the Plaintiffs.

      153.    The Defendants benefited from the fraud enumerated above and other acts of fraud described herein in the following ways:

        a.     By reducing turnover in an industry that has high rates of turnover among low level employees;

        b.     By having a work force that would tolerate receiving lower wages than the workforce that did not have an immigration Application pending;

        c.     By having a work force that received less pay and less increases in pay than a workforce that did not have an immigration Application pending.

      154.    Defendant Augusta Foods, Café Express, Wendy's and the Attorney Defendants were all acting in concert and for the same restaurants and employees, despite the name changes.  The fraud began when Augusta Foods and its attorneys, Boyar &

Miller and the individual attorneys named who work or used to work for Boyar & Miller, including Michelle Bohreer, accepted the duty to file the Applications. The deadline was missed on April 30, 2001. Thereafter Augusta, Café Express, Wendy's and the Attorney Defendants covered up the missed deadline and continued to withhold legal fees from its employees' paychecks despite the fact that they knew the Application deadline had been missed. Café Express and Wendy's are liable for Augusta's acts, as explained elsewhere in this complaint and incorporated again herein, and as confirmed by Michelle Diaz to the Texas Workforce Commission, because each entity " . . . continues to function exactly as it did at the time of the application and the alien continues in the same position with this new entity created only to accomplish this capital infusion."[21]

155.     Plaintiff was injured by the fraud when Augusta, Café Express, and Wendy's fraudulently continued to withhold $25.00 or more a week from their paychecks for services not rendered, and continued to lie and mislead Plaintiffs about the status of those services that were not rendered.     Plaintiffs' damages, however, go beyond the $25.00 or more a week that was deducted from the Plaintiffs' paychecks. The fraud engaged in by Augusta, Café Express, Wendy's and the Attorney Defendants caused the Plaintiffs to continue to work at Café Express and prevented them from seeking other opportunities.     The fraud also kept the Plaintiffs from beginning a new application process with the INS sooner. For instance, the damages include an amount necessary to compensate Plaintiffs for the fact that they will not have the opportunity to become a permanent resident and ultimately a United States citizen.     Plaintiff has also suffered mental anguish as a result of Defendants' fraud.

---

[21] Document filed by Michelle Diaz with the Texas Workforce Commission, signed March 30, 2004 and attached as Exhibit "I," Appendix page 57.

156.   The fraud committed against Plaintiffs occurred in Dallas and Houston, Texas.  The wrongs began at the time the duty to file the Applications was accepted by the defendants prior to April 30, 2001.  The fraud continued through the time that each employee was fired, because the deadline was missed, on September 15, 2006.

157.   The statements were fraudulent because they were not true.  How the particular fraud worked was that August Foods and later Café Express and later Wendy's and each of the Attorney Defendants would lie to the Plaintiff / applicant concerning the status of their Applications. What August Foods, Café Express, Wendy's and the Attorney Defendants gained from the fraud was $25.00 or more a week from each victim as well as having a captive work force along the lines of indentured servants who would be scared to do anything to displease Café Express while these employees wrongfully believed they had valid Applications on file that would allow them permanent residency and ultimately citizenship.

158.   The specific fraudulent acts of Augusta Foods include:

a.   every piece of written correspondence sent to the Plaintiffs, some of which have been attached hereto, and others of which have been or will be produced in discovery;

b.   every communication from a representative of August Foods, including its managers, supervisors and attorneys in which Plaintiff was told that her Application was pending;

c.   every instance in which Augusta Foods withheld money from the Plaintiff's paycheck for payment of costs and fees related to the 245(i) Application;

d.      intentionally and recklessly failing to inform the Plaintiff that her Application had been late-filed; and,

e.      other acts of fraud set forth herein.

160.    The specific fraudulent acts of Café Express include:

a.      every piece of written correspondence sent to the Plaintiffs, some of which have been attached hereto, and others of which have been or will be produced in discovery;

b.      every communication from a representative of Café Express, including its managers, supervisors and attorneys, which were many, in which Plaintiffs were told that their Application was pending;

c.      every instance in which Café Express withheld money from the Plaintiffs' paychecks for payment of costs and fees related to the 245(i) Application;

d.      intentionally and recklessly failing to inform the Category I and II Plaintiffs that their Applications had been late-filed; and,

e.      other acts of fraud set forth herein.

161.    The specific fraudulent acts of Wendy's include:

a.      every piece of written correspondence sent to the Plaintiffs, some of which have been attached hereto, and others of which have been or will be produced in discovery;

b.      every communication from a representative of Wendy's, which were many, including its managers, supervisors and attorneys in which Plaintiffs were told that her Applications were pending;

c. every instance in which Wendy's withheld money from the Plaintiffs' paycheck for payment of costs and fees related to the 245(i) Applications;

d. intentionally and recklessly failing to inform the Plaintiffs that their Applications had been late-filed; and,

e. other acts of fraud set forth herein.

162. The specific fraudulent acts of the Attorney Defendants include:

a. every piece of written correspondence sent to the Plaintiffs, some of which have been attached hereto, and others of which have been or will be produced in discovery;

b. every communication from an Attorney Defendant, which were many, including their associates, paralegals, interpreters, and others working at their direction in which Plaintiffs were told that their Applications were pending;

c. every instance in which an Attorney Defendant withheld money from the Plaintiffs' paychecks, or billed a Plaintiff, for payment of costs and fees related to the 245(i) Application;

d. intentionally and recklessly failing to inform the Plaintiffs that their Applications had been late-filed; and,

e. other acts of fraud set forth herein.

**K.** **Count Eleven – Intentional Misrepresentation**

163. Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

164.     Defendants intentionally misrepresented the facts to the Plaintiffs for the express purpose of covering up their failure to properly and timely file the *Applications.* The Defendants took numerous steps both in writing and orally to convince the Plaintiffs that their *Applications* had been filed timely and were still pending and/or had been approved and that they either were or would soon be granted permanent resident status.[22] As a direct and proximate cause of the Defendants' conduct, the Plaintiffs have suffered substantial damages.

### L.     Count Twelve – Civil Conspiracy

165.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

166.     Augusta Foods, Café Express, Wendy's, and the Attorney Defendants were members of a combination of persons.   The object of the combination was to accomplish an unlawful purpose and to accomplish a lawful purpose by unlawful means.

167.     Augusta Foods, Café Express, Wendy's, and the Attorney Defendants conspired and combined to do the following unlawful acts or to accomplish the following lawful purposes by unlawful means, along with other acts described elsewhere herein:

a.     The Defendants conspired to cause money to be withheld from the Plaintiffs' paychecks for services that provided no benefit to the Plaintiffs;

b.     The Defendants conspired to cause money to be paid in fees and costs to the Attorney Defendants for services that provided no benefit to the Plaintiffs;

c.     The Defendants conspired to commit the fraud set forth and described in specific detail herein;

---

[22]  Please see Exhibits "I" – "L."

d.      The Defendants conspired to engage in the breach of fiduciary duties set forth in specific detail and described herein;

e.      The Defendants conspired to engage in the intentional acts set forth and described in specific detail herein;

f.      Once the Defendants learned that the Applications had not been timely filed, the Defendants conspired to cover up and keep this knowledge from the Plaintiffs so that the Plaintiffs would continue to work despite the wages and conditions.

168.    The members of this conspiracy had a meeting of the minds on the object or course of action set forth herein.

169.    The Plaintiffs suffered injury as a proximate result of the wrongful act.

## INTEREST

170.    Plaintiffs are entitled to receive, and hereby request, pre- and post-judgment interest.

## ATTORNEYS' FEES

171.     Plaintiffs are entitled to recover attorneys' fees and hereby request the same.

## REQUEST FOR JURY TRIAL

172.    Plaintiffs request a jury trial and have tendered the appropriate fee.

## PRAYER

WHEREFORE, all Plaintiffs in these consolidated actions and in actions later consolidated herein pray that the Defendants be cited to appear and answer, and that the Plaintiffs have judgment entered in their favor and against the Defendants as follows:

**Category I Plaintiffs**

a.      All actual damages arising from the acts set forth herein;

b.      All general damages arising from the acts set forth herein;

c.      All special damages that were foreseeable and resulted naturally but not necessarily from the Defendants' wrongful acts;

d.      Expectancy damages sufficient to put the Plaintiffs in as good a position as they would have been in if the contract had been performed properly.  This includes any consequential losses the Plaintiffs incurred because of the breach of contract.  Consequential damages include all foreseeable damages naturally arising from the fact that the Plaintiffs lost their opportunity to become permanent residents and U.S. Citizens;

e.      Special damages arising out of the possibility that the Plaintiffs will be deported;

f.      Special damages arising out of the possibility that the Plaintiffs may be separated from family members because of the acts of the Defendants;

g.      Special damages to compensate the Plaintiffs for their inability to sponsor family members for immigration to the U.S.;

h.      Reliance damages including all funds withheld from the Plaintiffs' paychecks and all money paid to any Defendant for services related to the filing or prosecution of the 245(i) Applications.

i.      Restitution damages;

j.      Unjust enrichment, equitable and quantum meruit damages including an amount sufficient to compensate the Plaintiffs for the additional value added to the Café Express chain of restaurants because the Defendants were able to establish and maintain an indentured work force, thus reducing turnover and requiring the Plaintiffs to work for wages below that of similarly situated workers employed by Café Express;

k.      Lost profits;

l.      Loss of past and future earning capacity;

m.      Past and future pain and suffering;

n.      Past and future mental anguish;

o.      Past and future loss of the value of permanent residency and U.S. Citizenship;

p.      Past and future loss to family members who would have qualified for permanent residency under the LIFE Act Amendment;

q.      Exemplary damages sufficient to penalize each individual Defendant for the outrageous, malicious, or morally culpable conduct set forth herein and sufficient to deter such conduct in the future;

r.      Punitive damages;

s.      For compensatory damages including actual damages consisting of the amount of money that was taken out of the Plaintiffs' paychecks, the amount of money that the Plaintiffs would have

earned during a lifetime of employment as a permanent resident and U.S. Citizen with regular rates of increase both for inflation, cost of living and advancement in the corporation;

t.      Damages to compensate the Plaintiffs for the fact that they will not qualify as permanent residents of the United States and will not have the opportunity to become a Citizen of the United States;

u.      Awarding Plaintiff such other and further relief that this court deems just and proper under the circumstances;

v.      Pre-judgment and post-judgment interest;

w.      Court costs; and,

x.      Attorneys' fees and costs of this action.

**Category II Plaintiffs:**

a.      All actual damages arising from the acts set forth herein;

b.      All general damages arising from the acts set forth herin;

c.      All special damages that were foreseeable and resulted naturally but not necessarily from the Defendants' wrongful acts;

d.      Expectancy damages sufficient to put the Plaintiffs in as good a position as they would have been in if the contract had been performed properly.   This includes any consequential losses the Plaintiffs incurred because of the breach of contract.   Consequential damages include all foreseeable damages naturally arising from the fact that the Plaintiffs were forced to work for lower wages and were afraid to leave the employment of the Café Express chain of restaurants;

e.  Reliance damages including all funds withheld from the Plaintiffs' paychecks and all money paid to any Defendant for services related to the filing or prosecution of the 245(i) Applications.

f.  Restitution damages;

g.  Unjust enrichment, equitable and quantum meruit damages including an amount sufficient to compensate the Plaintiffs for the additional value added to the Café Express chain of restaurants because the Defendants were able to establish and maintain an indentured work force, thus reducing turnover and requiring the Plaintiffs to work for wages below that of similarly situated workers employed by Café Express;

h.  Lost profits;

i.  Loss of past and future earning capacity;

j.  Past and future pain and suffering;

k.  Past and future mental anguish;

l.  Exemplary damages sufficient to penalize each individual Defendant for the outrageous, malicious, or morally culpable conduct set forth herein and sufficient to deter such conduct in the future;

m.  Punitive damages;

n.  For compensatory damages including actual damages consisting of the amount of money that was taken out of the Plaintiffs' paychecks;

o.  Awarding Plaintiff such other and further relief that this court deems just and proper under the circumstances;

p.   Pre-judgment and post-judgment interest;

q.   Court costs; and,

r.   Attorneys' fees and costs of this action.

**Category III Plaintiffs:**

a.   All actual damages arising from the acts set forth herein;

b.   All general damages arising from the acts set forth herin;

c.   All special damages that were foreseeable and resulted naturally but not necessarily from the Defendants' wrongful acts;

d.   Expectancy damages sufficient to put the Plaintiffs in as good a position as they would have been in if the contract had been performed properly.   This includes any consequential losses the Plaintiffs incurred because of the breach of contract.   Consequential damages include all foreseeable damages naturally arising from the fact that the Plaintiffs were forced to work for lower wages and were afraid to leave the employment of the Café Express chain of restaurants;

e.   Reliance damages including all funds withheld from the Plaintiffs' paychecks and all money paid to any Defendant for services related to the filing or prosecution of the 245(i) Applications.

f.   Restitution damages;

g.   Unjust enrichment, equitable and quantum meruit damages including an amount sufficient to compensate the Plaintiffs for the additional value added to the Café Express chain of restaurants because the Defendants were able to establish and maintain an indentured work

force, thus reducing turnover and requiring the Plaintiffs to work for wages below that of similarly situated workers employed by Café Express;

h.  Lost profits;

i.  Loss of past and future earning capacity;

j.  Past and future pain and suffering;

k.  Past and future mental anguish;

l.  Exemplary damages sufficient to penalize each individual Defendant for the outrageous, malicious, or morally culpable conduct set forth herein and sufficient to deter such conduct in the future;

m.  Punitive damages;

n.  For compensatory damages including actual damages consisting of the amount of money that was taken out of the Plaintiffs' paychecks;

o.  Awarding Plaintiff such other and further relief that this court deems just and proper under the circumstances;

p.  Pre-judgment and post-judgment interest;

q.  Court costs; and,

r.  Attorneys' fees and costs of this action.

Respectfully submitted,


s/Stan Broome
**Stanley D. Broome**
State Bar No. 24029457
**Matthew W. Bobo**
State Bar No. 24006860

BROOME BOBO LLP
105 Decker Court, Ste. 850
Irving,  Texas  75062
(214) 574-7500 (Telephone)
(214) 574-7501 (Facsimile)


**Jaime Barron**
State Bar No. 24009889
Jaime Barron, P.C.
5415 Maple Avenue, Suite 114
Dallas, Texas 75235
(214) 267-9300 (Telephone)
(214) 267-9302 (Facsimile)

**ATTORNEYS FOR THE PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing *Amended and Combined Complaint* has been served on counsel through the ECF system and/or certified mail, return receipt requested, in accordance with the Rules of Civil Procedure as set forth below, on this 27th day of September, 2007.

**William D. Cobb, Jr.**
Cowles & Thompson
901 Main Street, Suite 4000
Dallas, TX 75202

**Larry Veselka**
Smyser, Kaplan & Veselka, LLP
700 Louisiana Street, Suite 2300
Houston, TX 77002-2728

**Karri J. Webb-Oldham**
Barker, Lyman, Twining, Weinberg & Ferr
1221 McKinney, 3600 One Houston Center
Houston, TX 77010

**Sam Blair**
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue, First Tennessee Bldg
Memphis, TN 38103

**William Church**
Akin, Gump, Strauss, Hauer &  Feld, LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4675

                                                    s/Stan Broome_____
                                                  Stanley D. Broome