**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CLAUDIA GARCIA, et. al. | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:06-CV-01936-D |
| v. | § | (Consolidated with |
| | § | Civil Action No. 3:06-CV-01937-D, |
| BOYAR & MILLER, PC; AUGUSTA | § | Civil Action No. 3:06-CV-01938-D, |
| FOODS, LLC; JAY WILLIAM BOYAR; | § | Civil Action No. 3:06-CV-01939-D |
| and E. MICHELLE BOHREER. | § | Civil Action No. 3:06-CV-02177-D |
| | § | Civil Action No. 3:06-CV-02206-D |
| Defendants. | § | Civil Action No. 3:06-CV-02236-D |
| | § | Civil Action No. 3:06-CV-02241-D |
| | § | Civil Action No. 3:06-CV-00984-D) |
| | § |  and, |
| | § | Civil Action No. 4:06-CV-03374 |
| | § | (originally removed to the Southern |
| | § | District of Texas) |
| | § | |
| | § | **ECF** |
| | § | |

**PLAINTIFFS' SECOND AMENDED AND COMBINED COMPLAINT**

TO THE HONORABLE JUDGE:

COMES NOW, all Plaintiffs in these consolidated cases for the purpose of filing this their *Second Amended and Combined Complaint* and in support thereof allege as follows:

**INTRODUCTION**

1.     The LIFE Act Amendments of 2000 allowed an undocumented alien physically present in the United States on the date of enactment to file for and receive permanent residency in the United States, if and only if, an *Application for Alien Employment Certification* (hereinafter *Application(s)*) was received by the Department of

Labor on or before April 30, 2001.   Defendants agreed to file *Applications* for the Plaintiffs.   In accepting and executing this duty, the law firm of Boyar & Miller was retained to file and prosecute the *Applications*.   Boyar & Miller and the other attorneys and law firms named as Defendants (hereinafter the "Attorney Defendants") in this action filed the *Applications*, but missed the deadline for filing the *Applications* for each of the Plaintiffs.

2.      After missing the filing deadline, the Defendants took steps to keep the Plaintiffs in the dark, and led them to believe that their *Applications* had been filed timely, and, in due course, would be processed.   The filing deadline was crucial for the Plaintiffs to be allowed to eventually process their legal status inside the United States and thus avoid having to return to their country of nationality.   Because the *Applications* for the Plaintiffs were late filed, they are subject to the harsh penalties of INA § 212(a)(9).   That section of the immigration law states that an alien departing the United States who has accrued unlawful presence in the United States for one year or more and departs will be barred from returning to the United States for a period of ten years. Because Plaintiffs' *Applications* were not filed timely, these Plaintiffs lost their opportunity to become legal permanent residents in the United States, and cannot avoid the ten year bar and subsequent delays before reapplying.

3.      Defendants established a program for sponsorship with the INS.[1]   In exchange for deducting $25.00 or more a pay period from the Plaintiffs' paychecks,

---

[1] On November 25, 2002, the President signed the Homeland Security Act of 2002 into law. This law transferred INS functions to the new Department of Homeland Security (DHS). Immigration enforcement functions were placed within the Directorate of Border and Transportation Security (BTS), either directly, or under Customs and Border Protection (CBP) (which includes the Border Patrol and INS Inspections) or Immigration and Customs Enforcement (ICE) (which includes the enforcement and investigation components of INS such as Investigations, Intelligence, Detention and Removals).   On March 1, 2003,

Defendant Augusta Foods, LLC (hereinafter "Augusta Foods" or "Augusta" or "Café Express") and the Attorney Defendants assumed the duty to properly, competently and timely file and properly prosecute the *Applications*, which they failed to do.

4.      The Defendants compounded the egregiousness of their actions by continuing to deduct $25.00 or more a pay period from the Plaintiffs' paychecks, despite the fact that they knew, or should have known, that the *Applications* were not filed timely.

5.      The result to the Plaintiffs and their families can only be described as disastrous.  Applicants who timely filed on or before April 30, 2001 are allowed to process their paperwork inside the United States and thus avoid the terrible punishment of INA 212(a)(9) that requires an applicant to depart the United States and try to process their paperwork from their country of origin.  This provision automatically bars the applicant and banishes him or her for a period of 10 years from the United States.  The LIFE Act was created to allow undocumented aliens a window of opportunity to eventually correct their legal status inside the United States and thus avoid the serious consequences of INA 212(a)(9).  Because the Defendants missed the filing deadline of April 30, 2001, Plaintiffs and their families are barred from legalizing in the United States, and have lost their only opportunity to legally reside in the United States.  As such the Plaintiffs have lost all opportunities that come with having legal permanent resident status in the United States, as well as the future opportunity to become a United States Citizen.

---

services formerly provided by the Immigration and Naturalization Service (INS) transitioned into the Department of Homeland Security (DHS) under U.S. Citizenship & Immigration Services (USCIS).   With the acknowledgment of  these changes, the entity is referred to herein as "INS" for convenience.

---

6.     Café Express sent a letter to the Plaintiffs on or about July 7, 2006 (an exemplar of that letter is attached hereto and incorporated herein as Exhibit "A," but each Plaintiff received an individual copy of the same letter) informing them for the first time that their *Applications* submitted by the Defendants in 2001, could not be successfully completed.   Further, the Plaintiffs were told that unless they could prove that their individual *Application* was filed on or before April 30, 2001 they would be fired from their job on September 15, 2006.

7.     The Plaintiffs did not know until they received this letter that there was a problem with their *Applications*.   The Plaintiffs are now well aware that their hopes and expectations of becoming permanent residents, and eventually citizens, of the United States have been stripped away, and their jobs have been terminated.   Other than the relief asked for in this lawsuit, they have absolutely no remedy.

## PARTIES

8.     Plaintiffs are residents of Texas.   Plaintiffs were domiciled in Texas at the time of these events.   Plaintiffs include the following named individuals and each of their family members who would have qualified under the LIFE Act:

1. Angon-Villafana, Maribel
2. Cabrera, Carlos
3. Chavez, Jaime
4. Cruz, David E.
5. Cua, Gabriel
6. Cua, Manuel
7. Franco, Fidencio
8. Garcia, Adrian
9. Garcia, Claudia
10. Garcia, Jose Adrian
11. Garcia, Juventino
12. Garcia, Maria
13. Garcia, Martin
14. Garcia, Vicente

15. Maldonado, Francisco
16. Maldonado, Jesus
17. Murillo, Luis
18. Navarro, Augustin
19. Navarro, Estanislao
20. Olivares, Daniel
21. Orea, Benito
22. Par, Aura
23. Perez, Cesar
24. Ramirez, Santiago
25. Reynoso, Hugo
26. Rodriguez, Olga
27. Rosales, Eduardo Villalobos
28. Salazar, Jorge Luis Alonzo
29. Salazar, Juan Valerio
30. Sanchez, Ofelia Lopez
31. Serratos, Jose Hilario
32. Sosa, Araceli
33. Tzul, Francisco
34. Vidales, Mario

9.      Defendant Boyar & Miller, P.C. is a law firm with its principal place of business at 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.  They may be served through their registered agent for service of process Gary W. Miller, 4265 San Felipe Street, Suite 1200, Houston, Texas 77027.

10.      Defendant Jay William Boyar is an attorney licensed to practice law in the state of Texas.  He may be served at his business address which is 4265 San Felipe Street, Suite 1200, Houston, Texas 77027-2917.

11.      Defendant Augusta Foods, LLC is a Texas limited liability corporation with a registered place of business at 5858 Westheimer Rd., Suite 110, Houston, Texas 77057.  It may be served through its registered agent for service of process:  Stephen D. Lerner, 109 N. Post Oak Lane, Suite 200, Houston, Texas  77024.

12.     Defendant E. Michelle Bohreer is an attorney licensed to practice law in the state of Texas.  She may be served at her business address which is the Rivianna Building, 2777 Alan Parkway, Suite 865, Houston, Texas 77019.

## JURISDICTION AND VENUE

13.     Plaintiffs oppose and object to jurisdiction and venue in this Court. Plaintiffs chose various state court jurisdictions and venues for their individual causes of action and timely filed a motion to remand after the cases were removed to federal court. Plaintiffs have stated causes of action that encompass purely state law matters.  Plaintiffs maintain the objections to jurisdiction filed previously in this matter and affirmatively allege that this Court has no jurisdiction over the causes of action asserted herein.  There is no diversity of citizenship between the parties, as a majority of the properly named defendants are Texas residents and the plaintiffs reside in Texas.  No federal question has been raised or exists in this matter.

## FACTUAL ALLEGATIONS

14.     Plaintiffs were eligible to take advantage of the LIFE Act Amendments of 2000, P.L. 106-544, 8 U.S.C. §1255,[2] which changed the date in Section 245(i)(1)(B) to

---

[2]   8 U.S.C. §1255:  **Adjustment in status of certain aliens physically present in United States**.  (1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States – (A) who – (i) entered the United States without inspection; or (ii) is within one of the Classes enumerated in subsection (c) of this section; (B) who is the beneficiary (including a spouse or child of the principal alien, if eligible to receive a visa under section 203(d)) of – (i) a petition for Classification under section 204 that was filed with the Attorney General on or before April 30, 2001; or (ii) an application for a labor certification under section 212(a)(5)(A) that was filed pursuant to the regulations of the Secretary of Labor on or before such date; and (C) who, in the case of a beneficiary of a petition for Classification, or an application for labor certification, described in subparagraph (B) that was filed after January 14, 1998, is physically present in the United States on the date of the enactment of the LIFE Act Amendments of 2000; may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully  admitted for permanent residence.  The Attorney General may accept such application only if the alien remits with such application a sum equaling $1,000 as of the date of receipt of the application, but such application shall not be required from a child under the age of seventeen, or an alien who is the spouse or unmarried child of an individual who obtained temporary or permanent resident status under section 210 or 245A of the Immigration and Nationality Act or section 202 of the Immigration

---

April 30, 2001 and also added a paragraph (1)(C).  This section allows persons physically present in the United States on the date of the enactment of the LIFE Act Amendments of 2000 to apply to the Attorney General for the adjustment of their status to that of an alien lawfully admitted for permanent residency, if an *Application* was filed by April 30, 2001 with the Department of Labor.  A decision was made by Augusta at the corporate level to take advantage of the LIFE Act Amendments of 2000.

15.     On or around January 5, 2001, Augusta Foods, the owner of the Café Express chain of restaurants, sent an email to its stores noting that Café Express would be sponsoring their employees for the alien certification program discussed above.[3]

16.     Augusta was the sponsor of the alien certification program regarding the Plaintiffs.  As part of the program, Augusta and the Plaintiff entered into an agreement whereby $25.00 or more per pay period was deducted from the Plaintiffs' paycheck.  This money was delivered for safe keeping to Augusta and was segregated.  Likewise, the specific deductions were substantially kept in the form in which they were received (automatic deduction) and they were certainly not the subject of a title claim by Augusta.  This money was specifically held back and segregated for safe keeping - to be used for the timely filing of employee applications for permanent residency.

---

Reform and Control Act of 1986 at any date, who (i) as of May 5, 1988, was the unmarried child or spouse of the individual who obtained temporary or permanent resident status under section 210 or 245A of the Immigration and Nationality Act or section 202 of the Immigration Reform and Control Act of 1986; (ii) entered the United States before May 5, 1988, resided in the United States on May 5, 1988, and is not a lawful permanent resident; and (iii) applied for benefits under section 301(a) of the Immigration Act of 1990.  The sum specified herein shall be in addition to the fee normally required for the processing of an application under this section.  (2)  Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if -  (A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (B) an immigrant visa is immediately available to the alien at the time the application is filed.
[3] *See* letter from Michelle Diaz to Café Express restaurants, dated January 5, 2001, attached as Exhibit "B."

17.     Tragically, the Plaintiffs' applications were not timely filed.  However, Augusta continued to deduct $25.00 or more per pay period from Plaintiffs' paychecks even though Augusta knew or should have known that the deadline was missed.  Augusta breached its contract and became unjustly enriched by its conduct. Moreover, Augusta converted the Plaintiffs' money by wrongfully exercising dominion and control over it.

**A.     Additional Facts Related to the Fiduciary Relationship Between Augusta and the Plaintiffs.**

18.  The Plaintiffs' relationship with Augusta was not only contractual, there was also a fiduciary relationship among the parties.  More specifically, a fiduciary duty existed between Plaintiff and Augusta because Augusta was holding the funds deducted in trust for the Plaintiffs.  Augusta as trustee, owed Plaintiffs, among other things, a duty to disclose all material facts known to it that might affect the Plaintiffs' rights.  This duty was breached and Plaintiffs suffered damages as a result.

19.     All in all, Augusta chose to take on the obligation of making sure that any and all of its employees that qualified under the LIFE Act Amendments of 2000 applied for permanent residency.  Augusta stood to benefit if the Plaintiffs obtained amnesty under the program.  This would allow Augusta to move from its long held position of employing illegal workers to a position of operating legally.  As an added benefit, Augusta was able to keep a stable work force in an industry with a historically high turnover rate, and pay the Plaintiffs less than it paid similarly situated employees who were legally working.  Augusta, with the aid of the Attorney Defendants, were able to do this by convincing the Plaintiffs that their Applications were timely filed and that if  they quit  working  they  would  have  their  Application  terminated  and  could  not  seek

sponsorship with any other company.[4]  Augusta knew that these options would force the Plaintiffs to work for almost any pay and under any conditions for a long period of time.

**C.     Additional Facts Related to Legal Malpractice By The Attorney Defendants.**

20.     To accomplish the Application filing and legal process, Augusta arranged for the Attorney Defendants to represent the Plaintiffs and to satisfy the filing requirements and ongoing procedures required by the INS and the LIFE Act Amendments of 2000.  Augusta worked closely with the Attorney Defendants to provide Plaintiffs with the proper paperwork, instructions and directions on how to complete the paperwork, and generally oversaw the process.  In order to participate in the program, Augusta and the Attorney Defendants required that $25.00 or more a pay period be deducted from the Plaintiffs' paychecks for the costs and legal fees involved in the *Application* process.  The weekly deductions began in May 2001. To date, Plaintiffs have not been told how the money was used.  No explanation has been given.  Some of the Attorney Defendants sent additional bills directly to the Plaintiffs and received additional payment directly from some of the Plaintiffs.

21.     The Attorney Defendants accepted the attorney/client representation of the Plaintiffs.  They accepted legal fees in exchange for applying for and prosecuting the permanent residency *Applications* for the Plaintiffs.  The first step of this process was to promptly, properly and timely file the *Applications* for the Plaintiffs with the Department of Labor.

22.     Defendant Attorney Michelle Bohreer and Defendant Boyar & Miller filed I-140 forms with the Department of Justice.  This was not the correct procedure under the

---

[4] *See* Exhibit K.

LIFE Act and the INS rules.  I-140's cannot be filed with the Department of Justice until the Department of Labor issues a Labor Certificate.  Of course, the Department of Justice denied the Plaintiffs' I-140 applications.

23.     The Defendant Attorneys also completed the *Applications* and filed the *Applications* with the Department of Labor.  This was the correct procedure under the INS rules and the LIFE Act.  However, the *Applications* for the Plaintiffs were filed after the April 30, 2001 deadline.

24.     Any Applicant whose *Application* was not filed by April 30, 2001 does not qualify for the benefits of the LIFE Act Amendment.  The failure to timely file is a complete bar to any undocumented worker to legalize inside the United States under the LIFE Act.  There is no remedy in either law or equity to correct this failure unless the Applicant is grandfathered by another petition filed before the sunset date of April 30, 2001, except the remedies requested in this suit.

**D.     The Cover Up.**

25.     Despite knowledge by the Attorney Defendants and Augusta (either through direct knowledge or information that was known or should have been known to the Defendants) the Defendants failed to inform the Plaintiffs that the deadline had been missed.  Nor did they inform the Plaintiffs that their status in this country was illegal and that they would not qualify under the LIFE Act Amendments of 2000 to become permanent residents.  Instead, the Attorney Defendants and Augusta aggressively and expressly took steps to assure the duped immigrants that their *Applications* were being processed and that everything was taken care of and they had nothing to worry about. In addition, periodically the Plaintiffs' managers and supervisors would hold both formal

and informal meetings with the Plaintiffs. In each of these meetings, the Plaintiffs were assured that the *Applications* were pending and would be eventually approved. In addition, periodically attorneys and attorney representatives from the Attorney Defendants' law firms would meet with the Plaintiffs. The Attorney Defendants or their representatives gave similar assurances at each of these meetings.

26. To compound the lies and misinformation funneled by the Attorney Defendants and Augusta to the Plaintiffs, the Defendants continued to deduct $25.00 or more a pay period from the duped Plaintiffs.

27. In addition, Augusta continued to employ the Plaintiffs despite the fact that employing the Plaintiffs was in clear violation of U.S. law, especially after the Defendants knew or should have known that the *Applications* for labor certifications with the Department of Labor were late filed and dead on arrival.

**E.      The Gig is Up, and the Plaintiffs Are Fired.**

28. Eventually, a letter was sent to the Plaintiffs, on or about July 7, 2006, informing them for the first time that their *Applications* could not be successfully completed. The Plaintiffs were told that unless they could prove that their *Application* was filed on or before April 30, 2001 they would be fired on September 15, 2006.

29. This letter came as a shock to the Plaintiff. On one day the Plaintiffs believed that they had a secure job position, believed they were permanent residents of the United States (or soon would be), knew that they had paid thousands of dollars in legal fees and related costs to the Defendants, and were confident that their future, careers, family and legal presence in the United States was secure and would continue. Except for the money taken from the Plaintiffs, none of these beliefs were true. The

Plaintiffs were simply duped by lawyers (the Attorney Defendants) and their employer (Augusta) into believing this.  Not only were the Plaintiffs done a grave disservice which cannot be remedied (but for damages prayed for in this lawsuit), the money taken out of their paychecks for the last several years can be characterized as nothing less than theft. The fact that the money still has not been returned is unconscionable.

30.     Damages in this lawsuit must include the money stolen from the Plaintiffs' paychecks each week, plus money they would have earned but for the termination. But damages must also include sufficient funds to compensate the Plaintiffs for the loss of permanent residency, and the likelihood that they would have eventually qualified to apply for citizenship in the United States.  Damages must be sufficient to compensate the Plaintiffs for what that loss means to them and their family.   Under the clear and strict laws relating to immigration status, there is very little likelihood that the Plaintiffs will ever obtain permanent residency or U.S. citizenship because of the Defendants' failures. At best, the Plaintiffs may expect to be deported from the United States and must begin the application process anew, complete with the long delays and improbabilities that accompany this process.

## ESTOPPEL AND TOLLING STATUTE OF LIMITATIONS

31.     Defendants are estopped from asserting any statute of limitations defense to the claims alleged herein by virtue of their acts of failing to disclose material facts, suppressing their wrongful conduct, and taking express, regular, knowing and intentional acts of deception and misrepresentation towards the Plaintiff.

### JOINT AND VICARIOUS LIABILITY AMONG AND BETWEEN THE DEFENDANTS

32.     Plaintiffs reallege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

**A.      Joint Enterprise**

33.     At all times the employee Plaintiffs worked for the same chain of restaurants.  These restaurants were at all times known to the public as "Café Express."

34.     During the period of time pertinent to this suit, the restaurants were always operated in the same basic way, used the same concept, used the same branding, used the same d/b/a, used the same menu, and held itself out to the public as being the same entity.

35.     During this period of time there was no change to the management, supervisors, HR personnel or day-to-day running of the business despite the fact that the controlling entities name changed and the percentage of ownership changed over the course of time.

36.     Augusta Foods, took affirmative steps to take steps to convince the illegal workers not to leave its employ, such as sending them letters saying they could not complete the immigration process if they left the employ of Café Express and other oral and written communications, so that it would gain the benefit of a captured workforce. This included the benefit that Augusta would save money in not having to re-train its employees, not paying the 245(i) applicants as much as similarly situated employees who were not in the program, and other benefits that come with the establishment of a large indentured servant workforce.

37.     Once the deadline for filing under the LIFE Act was missed, Augusta Foods took steps to convince the Plaintiffs that the deadline had not been missed.

38.     At each step in the process Augusta employed attorneys to assist with this joint enterprise.  The Attorney Defendants participated in the joint enterprise described herein and received compensation and profit for participating in the joint enterprise.

39.     A common purpose was to be carried out by the enterprise.  This common purpose included a purpose to increase the value and profits of a chain of restaurants known to the public as "Café Express" by creating a work force that was forced or persuaded to continue employment with Café Express for reasons beyond the usual benefits of employment.

40.     Each of the Defendants agreed to the joint enterprise described herein, participated in the joint enterprise and took steps to continue the common purpose of the joint enterprise.

41.     Augusta Foods and the Attorney Defendants had a community of pecuniary interest in the common purpose of the joint enterprise.  Each hoped to and actually did profit from the common purpose.  The value of the Café Express chain increase, employment costs were reduced, and turnover rates were lower than if the joint enterprise and common purpose had not been in place.

42.     Augusta Foods and the Attorney Defendants had an equal right and even a duty to direct and control the joint enterprise.  At any time any of the participants in the joint enterprise could have told the Plaintiffs that the deadline had been missed.  This would have put an end to the joint enterprise.  Each participant - Augusta Foods and the Attorney Defendants – and all of their members and directors – failed to do this.

43.     The Plaintiffs were injured by the joint enterprise.

C.      **Aiding and Abetting Liability:      Joint Liability Between All Defendants**

44.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

45.     When a defendant gives assistance or encouragement to a person committing a tort, and the assistance or encouragement is a substantial factor in causing the tort, the defendant is considered a tortfeasor and is responsible for the consequences of the tort.[5]   The Texas Supreme Court long ago recognized aiding and abetting as a theory for imposing joint liability.[6]   Since at least 1930, Texas courts have assumed a defendant can be liable for a tort under a theory of aiding and abetting.[7]   Each of the Defendants aided and abetted the others in the commission of each of the torts asserted in this complaint.

46.     Each of the Defendants had knowledge of the other's conduct.   All of the Defendants had personnel or attorneys that held themselves out as having competent knowledge of the human resources issues and immigration issues asserted in this complaint.   All of the Defendants knew or should have known the deadline for filing the Application for Labor Certification with the Department of Labor.   All of the Defendants knew or should have known that the deadline had been missed for the filing of the Plaintiffs' Applications.   Each of the Defendants aided and abetted the other to cover up the fact that the deadline was missed.   Each of the Defendants wanted to ensure and took steps to ensure that the Café Express chain of restaurants had a captured work force that would continue working for the Café Express chain for a long period of time for reasons

---

[5] Restatement (2d) of Torts §876(b) cmt. D (1979).
[6] *See Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509, 514 (Tex.1942).
[7] *See, e.g., King v. Shawver,* 30 S.W.2d 930, 931 (Tex. App. – Fort Worth 1930, no writ)(case submitted to jury on theory of aiding and abetting).

unrelated to the Plaintiffs employment.  Each of the Defendants knew or should have known that the Applications for the Plaintiffs were dead on arrival.

47.     Each of the Defendants had the intent to assist the primary actor in committing the tort.  All of the Defendants stood to gain – and did gain – by the commission of the torts asserted in this action.

48.     Each of the Defendants gave the primary actor assistance or encouragement.  Without the help of each of the Defendants at various steps in the process, the injury to the Plaintiffs would not have occurred or been as great.  For example, if any of the Attorney Defendants had alerted the Plaintiffs at any time that the deadline had been missed, then the benefits of a captured workforce would have disappeared.  It took all of the Defendants working in concert to gain the benefits desired by the Café Express chain of restaurants.

49.     The Defendants' acts in aiding and abetting each other in committing these torts was a substantial factor in completing the torts.

**D.     Assisting-or-Encouraging:  Joint Liability Between All Defendants**

50.     Plaintiffs reallege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

51.     When a defendant gives assistance or encouragement to a person committing a tort, and the assistance or encouragement is a substantial factor in causing the tort, the defendant is considered a tortfeasor and is responsible for the consequences of the tort.[8]  Each of the Defendants aided and abetted the others in the commission of each of the torts asserted in this complaint.  Each of the Defendants assisted or encouraged the others in the commission of each of the torts asserted in this complaint.

---

[8] Restatement (2d) of Torts §876(b) cmt. D (1979).

52.     Each of the Defendants had knowledge of the other's conduct.  All of the Defendants had personnel that held themselves out as having competent knowledge of the human resources issues and immigration issues asserted in this complaint.  All of the Defendants knew or should have known the deadline for filing the Application for Labor Certification with the Department of Labor.  All of the Defendants knew or should have known that the deadline had been missed for the filing of the Plaintiffs' Applications.  Each of the Defendants assisted and encouraged the other to cover up the fact that the deadline was missed.  Each of the Defendants wanted and took steps to ensure that the Café Express chain of restaurants had a captured work force that would continue working for the Café Express chain for a long period of time for reasons unrelated to the Plaintiffs employment.  Each of the Defendants knew or should have known that the Applications for the Plaintiffs were dead on arrival.

53.     Each of the Defendants had the intent to assist the primary actor in committing the tort.  All of the Defendants stood to gain – and did gain – by the commission of the torts asserted in this action.

54.     Each of the Defendants gave the primary actor assistance or encouragement.  Without the help of each of the Defendants at various steps in the process, the injury to the Plaintiffs would not have occurred or been as great.  For example, if any of the Attorney Defendants had alerted the Plaintiffs at any time that the deadline had been missed, then the benefits of a captured workforce would have disappeared.  It took all of the Defendants working in concert to gain the benefits desired by the Café Express chain of restaurants.

55.     The Defendants' assistance or encouragement with each other in committing these torts was a substantial factor in completing the torts.

### E.     Assisting-and-Participating:  Joint Liability Between All Defendants

56.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

57.     Assisting and participating has long been recognized as a theory for imposing joint liability in Texas.[9]

58.     Each of the Defendants activities described herein accomplished a tortuous result.

59.     Each of the Defendants provided substantial assistance to the other Defendants in accomplishing the tortious result.

60.     Each of the Defendant's own conduct, separate from the other's conduct, was a breach of duty to the Plaintiff.  Each of the Attorney Defendants owed a duty of the highest degree to the Plaintiffs to act as a reasonable attorney in an attorney-client relationship.  Augusta had a duty to the Plaintiffs to fulfill the procedures required by the LIFE Act amendment in a competent manner, and to act as a reasonable employer in keeping the Plaintiffs informed, to be truthful and to otherwise act as a reasonable employer.  Each of the Defendants breached their duties to the Plaintiffs.

61.     Each of the Defendants' participation was a substantial factor in causing the torts and breaches of fiduciary duties alleged in this complaint.

---

[9] *See City of Fort Worth v. Pippen,* (439 S.W.2d 660, 665 (Tex.1969)( when defendant knowingly participated in another's breach of fiduciary duty to plaintiff, defendant is a joint tortfeasor).

**F.      Concert of Action:  Joint Liability Among All Defendants**

62.      Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

63.      Concert of action is defined as an action that was planned, arranged, and agreed on by parties acting together to further some scheme or cause, making all involved liable for the actions of one another.[10]  Under this theory of liability, those who pursue a common plan or design to commit a tortuous act and actively participate in it are equally liable.[11]

64.      Some of the Defendants' acts alleged herein were intentional or grossly negligent.  This includes the allegations explained and asserted under the headings fraudulent inducement to contract, conversion, breach of fiduciary duty, fraud, and intentional misrepresentation.

65.      For each of the acts described herein that were intentional or grossly negligent, Plaintiffs assert joint liability among all of the Defendants for each of the Defendants acts under a theory of concert of action.

66.      The torts alleged herein included acts that were highly dangerous, deviant or were an antisocial group activity likely to cause certain harm to a large number of people.  This includes all acts taken in order to ensure that the Café Express chain of restaurants maintained a captured and indentured workforce for a long period of time.

67.      Each of the Defendants agreed, either explicitly or tacitly, to cooperate in a particular plan or to accomplish a particular result.

68.      Each of the Defendant's own conduct was tortious.

---

[10] *Black's Law Dictionary*  307 (8th Ed. 2004).
[11] *See Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 69 (Tex. 1989).

69.     The tortious acts of the Defendants acting in concert caused the Plaintiffs' injuries.

### K.     Civil Conspiracy:  Joint Liability Among All Defendants

70.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

71.     Augusta Foods and the Attorney Defendants were members of a combination of persons.  The object of the combination was to accomplish an unlawful purpose and to accomplish a lawful purpose by unlawful means.

72.     Augusta Foods and the Attorney Defendants conspired and combined to do the following unlawful acts or to accomplish the following lawful purposes by unlawful means:

a.     The Defendants conspired to cause money to be withheld from the Plaintiffs' paychecks for services that provided no benefit to the Plaintiffs;

b.     The Defendants conspired to cause money to be paid in fees and costs to the Attorney Defendants for services that provided no benefit to the Plaintiffs;

c.     The Defendants conspired to commit fraud set forth set forth and described in detail herein;

d.     The Defendants conspired to engage in the breach of fiduciary duty set forth and described herein;

e.     The Defendants conspired to engage in the intentional acts set forth herein;

f.      Once the Defendants learned that the Application had not been timely filed, the Defendants conspired to cover up and keep this knowledge from the Plaintiffs so that the Plaintiffs would continue to work despite the wages and conditions.

73.     The members of this conspiracy had a meeting of the minds on the object or course of action set forth herein.

74.     The Plaintiffs suffered injury as a proximate result of the wrongful act.

## CAUSES OF ACTION

### A.      Count One – Legal Malpractice

75.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

76.     The Attorney Defendants had an attorney/client relationship with the Plaintiffs because: (1) the Plaintiffs were their clients; (2) the Attorney Defendants agreed to take on the representation; (3) the Attorney Defendants agreed to take whatever legal action necessary to properly and timely submit the *Applications* on behalf of the Plaintiffs; (4) the Attorney Defendants charged the Plaintiffs for performance of legal services; (5) the Attorney Defendants were paid for this legal service (6) the Plaintiffs reasonably believed that the Attorney Defendants were working on their behalf; (7) the Plaintiffs periodically received updates from the Attorney Defendants.  Further, the Attorney Defendants represented themselves as the Plaintiffs' attorney.  There is no doubt that the Attorney Defendants engaged in the practice of law on behalf of the Plaintiffs in taking steps to file the *Applications* (including signing the *Applications* attorney for the Plaintiffs), but failed to file the *Applications* timely.  Failure to properly and timely file the *Applications* resulted in a breach of the duty that the Attorney

Defendants owed to the Plaintiffs.  In addition, failure to timely inform the Plaintiffs of the error exacerbated the damages.  In addition, continuing to bill the Plaintiffs after the missed deadline exacerbated the damages.  The Attorney Defendants' actions described throughout this complaint were below the standard of care owed by an attorney to his or her clients.  These breaches proximately caused the Plaintiff injuries, and substantial damages were incurred.

### B.     Count Two – Breach of Contract – Legal Malpractice

77.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

78.     The Attorney Defendants entered into a contractual relationship to provide legal services to the Plaintiffs.  The Attorney Defendants breached this contract by failing to properly and timely supply competent legal services to the Plaintiffs.  The failure to perform competently the services required by the Plaintiff proximately resulted in substantial damages to the Plaintiff.

### C.     Count Three – Breach of Contract – Augusta

79.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

80.     Augusta entered into a contract with the Plaintiff to oversee and process the correct, accurate and timely filing of the *Applications* on behalf of the Plaintiffs.  This agreement began when Augusta, the owners of the Café Express chain of restaurants, offered and promised to assist the Plaintiffs in the filing and prosecuting requirements under the LIFE Act.  These promises and offers were made repeatedly by Augusta and

the attorneys working on behalf of Augusta.  The Plaintiffs accepted Augusta's offers and promises and expected the obligations of this agreement to be performed by Augusta.

81.     This began when Augusta Foods offered, and the Plaintiffs accepted the offer, for Augusta Foods to serve as the employer sponsor for the Plaintiff's Application and to take all necessary steps in the filing and prosecuting of the immigration forms.  In addition, Augusta Foods offered to find counsel, provide legal advice, present the necessary forms and be a source of communication to the Plaintiffs on the status of the Application.  Augusta Foods received money and other benefits because of this contract. Augusta Foods breached the contract in every way.  Augusta Foods failed to make sure the Applications were timely filed, failed to provide sound legal advice, failed to promptly and accurately inform the Plaintiffs of the status of the Application and engaged in wrongdoing directed at the Plaintiffs.  Augusta Foods breached the contract with the Plaintiffs and this breach injured the Plaintiffs.

82.     Augusta deducted $25.00 or more per pay period from Plaintiffs' paychecks. Augusta's HR personnel regularly communicated in writing with the Plaintiffs, and repeatedly assured the Plaintiffs that their *Applications* were correctly and timely filed and that they were taking steps (and later claimed that they had completed the steps necessary) to accurately, competently and timely file the *Applications*.  Augusta offered to fulfill all of these duties.  The Plaintiffs accepted the offer and completed all obligations on their part including paying the costs and fess related to the prosecution of the immigration paperwork, attending meetings related to the 245(i) program and completing the paperwork requested by Augusta.  Augusta breached this contract by

failing to provide the services they agreed to provide.  This breach proximately led to the substantial damages incurred by the Plaintiff.

83.     The Attorney Defendants had an attorney client relationship with the Plaintiffs.  The Attorney Defendants offered to provide sound legal advice and take all procedural steps necessary to file the Plaintiff's Application.  The Attorney Defendants breached this contract by failing to timely file the Application, failing to provide correct legal advice from 2001 through 2006, failing to keep the Plaintiff informed on the correct status of the Application and continuing to bill and accept fees for representing the Plaintiff.   The Plaintiffs were injured because of the Attorney Defendants conduct.

### D.  Count Four:  Fraudulent Inducement to Contract

84.     Plaintiffs re-allege and incorporates by reference all paragraphs contained in this petition, as if fully set forth herein.

85.     Defendants Augusta Foods and Defendant Boyar & Miller and Defendant Michelle Bohreer induced Plaintiffs to enter into the contract made the basis of this litigation upon representations that they could competently prosecute the Plaintiffs Application.  These representations were later ratified by the conduct and representations of Augusta and the other Attorney Defendants.

86.     When Defendants made the foregoing representations, they (a) knew the representations were false, or (b) made the representations recklessly, as a positive assertion, and without knowledge of their truth.  Defendants made the representations with the intent that the Plaintiffs act on them.  Plaintiffs relied upon these representations in entering into the contract.

87.     As a direct and proximate cause of Defendants' conduct, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court and request an order from this Court awarding Plaintiffs all damages allowed by law.

88.     Plaintiffs further seek exemplary damages and treble damages in an amount to be determined by the trier of fact.

**E.      Count Five – Negligence**

89.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

90.     The Defendants accepted the duty to competently, correctly and timely file and process the Plaintiffs' *Applications.* After accepting this duty and taking steps to complete this duty, the Defendants negligently failed to timely complete the task, and engaged in other acts that breached the duties that they owed to the Plaintiffs. This breach proximately led to the substantial damages incurred by the Plaintiff. These damages go far beyond the $25.00 or more a pay period that was deducted from the Plaintiff's paycheck. For instance, the damages include an amount necessary to compensate Plaintiffs for the fact they will not have the opportunity to become a permanent resident and ultimately a United States citizen. Plaintiffs have also suffered mental anguish as a result of Defendants' negligence.

91.     The Defendants were also negligent in the following:

        a.      Failing to correctly, competently and promptly inform the Plaintiffs of the status of the immigration process after affirmatively accepting this duty;

        b.      Withholding funds from the Plaintiffs paychecks;

---

c.      Sending correspondence to the Plaintiffs with inaccurate information related to the immigration process and the individual Plaintiffs' Applications status;

d.      Filing incorrect paperwork with the Department of Justice;

e.      Incorrectly prosecuting the relief allowed by the LIFE Act Amendment;

f.      Failing to correctly complete the forms necessary for relief under the 245(i) program;

g.      Failing to file the Applications with the Department of Labor on or before April 30, 2001.

h.      Conducting meetings in which incorrect information was given to the Plaintiffs;

i.      Withdrawing the Plaintiffs Applications from consideration; and,

j.      Other acts of negligence that will be shown at the trial of this matter.

**F.      Count Six – Negligent Misrepresentation**

92.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

93.     The Defendants regularly communicated with the Plaintiffs even after they knew or should have known that the filing deadline had been missed.  In both written and oral communications, the Defendants regularly assured the Plaintiffs that their *Applications* had been filed timely, and that the *Applications* were being processed and in due course the Plaintiffs would be permanent residents.  These actions took place after

the Defendants knew or should have known that the deadline had been missed.  These acts of negligent misrepresentation caused substantial damages to the Plaintiffs. Plaintiffs have also suffered mental anguish as a result of Defendants' negligent misrepresentations.

### G.    Count Seven – Unjust Enrichment, Restitution

94.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

95.    The Defendants continued to collect fees by deducting money from the Plaintiffs' paychecks, even after the Defendants knew or should have known that the *Applications* were late-filed.  This was done by automatic deductions of $25.00 or more per period.  By receiving these funds, the Defendants were unjustly enriched and the Plaintiff was substantially damaged.

96.    Augusta Foods began deducting money from the Plaintiffs paychecks in 2001.  The Plaintiffs were told that this money was to be used for legal services, costs and fees associated with the filing of immigration papers, retaining counsel and other costs related to the filing.  The money belonged to the Plaintiffs.  The money was kept by Augusta Foods.  August Foods was enriched by these automatic deductions from the Plaintiffs paychecks.  The Plaintiffs were damaged because they were forced to work without pay to cover these costs.  The Plaintiffs received no value for the money because the Applications were late filed.  As such, Augusta Foods was unjustly enriched to the Plaintiffs detriment.

97.    Augusta took steps to establish and maintain a captured work force by threatening the Plaintiffs or making it difficult for Plaintiffs to leave employment with the

Café Express chain of restaurants for fear that their Application would be withdrawn. Augusta, who owned and operated the Café Express chain of restaurants benefited tremendously from this indentured work force.  Augusta was able to establish and maintain a work force that would not leave regardless of the conditions, and would work for less wages than similarly situated employees working for the Café Express chain of restaurants.  Because of this Augusta was enriched.  The Café Express chain of restaurants was more profitable and more valuable than it otherwise would have been. This enrichment came at a cost and to the detriment of the Plaintiffs.

98.     The Attorney Defendants billed the Plaintiffs both directly and indirectly. The Plaintiffs paid the Attorney Defendants for costs and fees related to the filing of the Application.  Because the Applications were not filed timely, the Plaintiffs received nothing of value from the Attorney Defendants.  The money belonged to the Plaintiffs. The money was kept by the Attorney Defendants.  The Attorney Defendants were enriched by the Plaintiffs.  The Plaintiffs were injured.  As such, the Attorney Defendants were unjustly enriched to the Plaintiffs detriment.

**H.     Count Eight – Conversion**

99.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

100.     Defendants stole and collected money from the Plaintiffs' paychecks on a weekly basis, long after they knew or should have known that the *Applications* were not filed timely.  By doing so, funds that belonged to the Plaintiffs were wrongfully converted for the use of the Defendants.

101.     Defendant Augusta Foods and its attorneys first arranged for the money to be deducted.   Augusta continued to deduct the money each week from the Plaintiff's paycheck.   This money rightfully belonged to the Plaintiff.   The money has never been returned by Augusta Foods.

102.     The Attorney Defendants instructed Augusta Foods to make the wrongful deductions from the Plaintiffs paychecks.   The Attorney Defendants received and are still holding at least some of the money.   In addition, the Attorney Defendants wrongfully billed the Plaintiffs and kept money paid by the Plaintiffs, despite the fact that the Plaintiffs received no benefit from the Attorney Defendants.

103.     The acts set forth above and in other places throughout this petition constitute conversion on the part of the Attorney Defendants and Augusta.

**I.     Count Nine – Breach of Fiduciary Duty**

104.     Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

105.     There was a fiduciary relationship among the parties.   The Defendants breached this fiduciary duty.   This breach caused injury to the Plaintiffs and a benefit to the Defendants.

106.     An informal fiduciary duty arises from a moral, social, domestic, or purely personal relationship of trust and confidence.[12]   A fiduciary duty based on an informal relationship may arise when a high degree of trust, influence, or confidence has been acquired.[13]   In this case, a relationship of trust, confidence and dependence was developed because Augusta, including members of their human resources department and

---

[12] *Meyer v. Cathey,* 167 S.W.3d 327, 331 (Tex.2005); *Schlumberger Tech. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997);
[13] *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.* 823 S.W.2d. 591, 594 (Tex. 1992).

their managers and supervisors regularly gave the Plaintiffs' legal advice, advice on immigration matters and instructions on the consequences of leaving the employment of Café Express.  This was done in both formal and informal meetings, and in writing between Augusta and the Plaintiffs during the same period.  The Plaintiffs depended on Augusta to give them accurate advice and counsel.  Augusta encouraged and fostered a relationship of trust and confidence above and beyond a normal employer-employee relationship.  This trust resulted in a fiduciary relationship.    Augusta breached this fiduciary relationship and that breach injured the Plaintiffs.    In addition, Augusta benefited by its breach by capitalizing on a captured, low-paid work force over a long period of time.

107.    In addition, a fiduciary duty existed between the employees and Augusta because Augusta held the funds it deducted from the Plaintiffs' paychecks in trust for the Plaintiff.  Augusta, as trustee, owed Plaintiff, among other things, a duty to disclose all material facts known to it that might affect the Plaintiffs' rights.  This duty was breached and Plaintiffs suffered damages as a result.

108.    Defendants owe the highest duty to the Plaintiff and failed to fulfill this fiduciary duty by failing to, among other things, timely inform Plaintiffs of their *Application* status and continuing to deduct money from their paycheck.  These actions were directly in breach of the fiduciary duties owed by the Defendants to the Plaintiffs.

109.    The Attorney Defendants had an attorney/client relationship with the Plaintiffs.  Attorneys owe a fiduciary duty to their clients.  The Attorney Defendants breached this duty by failing to timely file the Applications; failing to immediately inform the Plaintiffs of the correct status of the Applications; working in concert with the

other Defendants to cover up their failure to timely file the Applications; writing, editing and authorizing correspondence to the Plaintiffs that contained incorrect legal advice and recommendations; billing and accepting money from the Plaintiffs for legal services that had no value to the Plaintiffs; withholding information from the Plaintiffs about the status of their Applications; withdrawing the Plaintiffs' Applications without their consent; and other acts described herein. The Attorney Defendants benefited from these acts by receiving payment for legal services that had no value, and actually harmed, the Plaintiffs. The Attorney Defendants' breach of fiduciary duties injured the Plaintiff.

### J.    **Count Ten – Fraud**

110.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

111.    Defendants engaged in the following fraudulent acts:

a.    The Defendants engaged in fraud by intentionally and recklessly failing to tell the Plaintiffs that their Applications were not filed timely, even when the Defendants knew or should have known that the Applications were not filed timely and were dead-on-arrival. This omission was intentional and reckless.

b.    Defendants engaged in fraud by intentionally and recklessly covering up their failure to properly and timely file the *Applications*. Defendants took numerous steps to convince the Plaintiffs that their *Applications* were still pending, would be ultimately approved, and that they would receive permanent residence, long after the Defendants knew or should have known that the application deadline had been missed.

      c.      The Defendants engaged in fraud by holding multiple meetings with the Plaintiffs and, at each meeting, telling the Plaintiffs that their Application was timely filed, that the Application was pending and would soon be approved, or words to that effect. This information was not true at the time that the Defendants made the statements and held the meetings, and Defendants either knew this or should have known this at the time. These acts were done intentionally and/or recklessly.

      d.      The Defendants engaged in fraud by expressly instructing the managers at various Café Express stores to specifically tell the Plaintiffs that the Applications had been timely filed, that the Applications were pending and that the Applications would soon be approved. This information was not true at the time that the Defendants made the statements and held the meetings, and Defendants either knew this or should have known this at the time. These acts were done intentionally and recklessly.

      e.      The Defendants engaged in fraud by drafting, authorizing, and sending correspondence to the Plaintiffs in which the Plaintiffs were repeatedly told that the Applications had been timely filed, that the Applications were pending and that the Applications would soon be approved. This information was not true at the time that the Defendants made the statements and held the meetings, and Defendants either knew this or should have known this at the time. These acts were done intentionally and/or recklessly.

      f.      The Defendants engaged in fraud by deducting money each week from the Plaintiffs' paychecks when the Defendants knew or should have known that the Plaintiffs were receiving no value for the money that was being deducted. These acts were done intentionally and/or recklessly.

g.     The Defendants engaged in fraud by telling the Plaintiffs that they could not leave the employment of Café Express, and that if they did leave the employment of Café Express that their Applications would be dismissed.   The Defendants did this by authorizing, editing and sending written correspondence to the Plaintiffs.   The Defendants also did this through instructions given to the Plaintiffs' managers and supervisors with the express instruction that this information be passed to the Plaintiffs.  The Defendants also did this by setting up, facilitating and holding a series of meetings in which they were told by representatives of the Defendants that they could not leave the employment of Café Express or their Applications would be dismissed. These acts were done intentionally and/or recklessly.

h.     The Defendants engaged in fraud by telling the Plaintiffs that they could not leave the employment of Café Express, and that if they did leave the employment of Café Express that their Applications would be dismissed unless they found another sponsor.  This was not a true statement, because the Applications were not timely filed, so a new employer sponsor would not have been able to effectively sponsor the late-filed Application.  The Plaintiffs and the Defendants knew that finding a new employer who would be willing to sponsor an immigration application would be exceedingly difficult.   The Defendants did this by authorizing, editing and sending written correspondence to the Plaintiffs.    The Defendants also did this through instructions given to the Plaintiffs' managers and supervisors with the express instruction that this information be passed to the Plaintiffs.  The Defendants also did this by setting up, facilitating and holding a series of meetings in which they were told the same

information by representatives of the Defendants.  These acts were done intentionally and/or recklessly.

        i.     The Defendants engaged in fraud by failing to return the money deducted each week from the Plaintiffs' paychecks when the Defendants knew or should have known that the Plaintiffs had received no value for the money that had been deducted.  These acts were done intentionally and/or recklessly.

112.    Augusta benefited from the fraud enumerated above and other acts of fraud described herein in the following ways:

        a.     By reducing turnover in an industry that has high rates of turnover among low level employees;

        b.     By having a work force that would tolerate receiving lower wages than the workforce that did not have an immigration Application pending;

        c.     By having a work force that received less pay and less increases in pay than a workforce that did not have an immigration Application pending.

113.    Defendant Augusta and the Attorney Defendants were all acting in concert and for the same restaurants and employees, despite the name changes.  The fraud began when Augusta Foods and its attorneys, Boyar & Miller and the individual attorneys named who work or used to work for Boyar & Miller, including Michelle Bohreer, accepted the duty to file the Applications.  The deadline was missed on April 30, 2001.  Thereafter Augusta and the Attorney Defendants covered up the missed deadline and continued to withhold legal fees from its employees' paychecks despite the fact that they knew the Application deadline had been missed.

114.    Plaintiff was injured by the fraud when Augusta fraudulently continued to withhold $25.00 or more a pay period from their paychecks for services not rendered, and continued to lie and mislead Plaintiffs about the status of those services that were not rendered.   Plaintiffs' damages, however, go beyond the $25.00 or more a pay period that was deducted from the Plaintiffs' paychecks.   The fraud engaged in by Augusta and the Attorney Defendants caused the Plaintiffs to continue to work at Café Express and prevented them from seeking other opportunities.   The fraud also kept the Plaintiffs from beginning a new application process with the INS sooner.   For instance, the damages include an amount necessary to compensate Plaintiffs for the fact that they will not have the opportunity to become a permanent resident and ultimately a United States citizen. Plaintiff has also suffered mental anguish as a result of Defendants' fraud.

115.    The fraud committed against Plaintiffs occurred in Dallas and Houston, Texas.   The wrongs began at the time the duty to file the Applications was accepted by the Defendants prior to April 30, 2001.

116.    The statements were fraudulent because they were not true.   How the particular fraud worked was that August Foods and each of the Attorney Defendants would lie to the Plaintiff / applicant concerning the status of their Applications. What August Foods and the Attorney Defendants gained from the fraud was $25.00 or more a pay period from each victim as well as having a captive work force along the lines of indentured servants who would be scared to do anything to displease Café Express while these employees wrongfully believed they had valid Applications on file that would allow them permanent residency and ultimately citizenship.

117.    The specific fraudulent acts of Augusta Foods include:

a.      every piece of written correspondence sent to the Plaintiffs, some of which have been attached hereto, and others of which have been or will be produced in discovery;

b.      every communication from a representative of August Foods, including its managers, supervisors and attorneys in which Plaintiff was told that her Application was pending;

c.      every instance in which Augusta Foods withheld money from the Plaintiff's paycheck for payment of costs and fees related to the 245(i) Application;

d.      intentionally and recklessly failing to inform the Plaintiff that her Application had been late-filed; and,

e.      other acts of fraud set forth herein.

118.    The specific fraudulent acts of the Attorney Defendants include:

a.      every piece of written correspondence sent to the Plaintiffs, some of which have been attached hereto, and others of which have been or will be produced in discovery;

b.      every communication from an Attorney Defendant, which were many, including their associates, paralegals, interpreters, and others working at their direction in which Plaintiffs were told that their Applications were pending;

c.      every instance in which an Attorney Defendant withheld money from the Plaintiffs' paychecks, or billed a Plaintiff, for payment of costs and fees related to the 245(i) Application;

d.      intentionally and recklessly failing to inform the Plaintiffs that their Applications had been late-filed; and,

      e.      other acts of fraud set forth herein.

**K.**      **Count Eleven – Intentional Misrepresentation**

119.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

120.    Defendants intentionally misrepresented the facts to the Plaintiffs for the express purpose of covering up their failure to properly and timely file the *Applications.* The Defendants took numerous steps both in writing and orally to convince the Plaintiffs that their *Applications* had been filed timely and were still pending and/or had been approved and that they either were or would soon be granted permanent resident status. As a direct and proximate cause of the Defendants' conduct, the Plaintiffs have suffered substantial damages.

**L.**      **Count Twelve – Civil Conspiracy**

121.    Plaintiffs re-allege and incorporate by reference all paragraphs contained in this petition, as if fully set forth herein.

122.    Augusta Foods and the Attorney Defendants were members of a combination of persons.  The object of the combination was to accomplish an unlawful purpose and to accomplish a lawful purpose by unlawful means.

123.    Augusta Foods and the Attorney Defendants conspired and combined to do the following unlawful acts or to accomplish the following lawful purposes by unlawful means, along with other acts described elsewhere herein:

      a.      The Defendants conspired to cause money to be withheld from the Plaintiffs' paychecks for services that provided no benefit to the Plaintiffs;

b.      The Defendants conspired to cause money to be paid in fees and costs to the Attorney Defendants for services that provided no benefit to the Plaintiffs;

c.      The Defendants conspired to commit the fraud set forth and described in specific detail herein;

d.      The Defendants conspired to engage in the breach of fiduciary duties set forth in specific detail and described herein;

e.      The Defendants conspired to engage in the intentional acts set forth and described in specific detail herein;

f.      Once the Defendants learned that the Applications had not been timely filed, the Defendants conspired to cover up and keep this knowledge from the Plaintiffs so that the Plaintiffs would continue to work despite the wages and conditions.

124.    The members of this conspiracy had a meeting of the minds on the object or course of action set forth herein.

125.    The Plaintiffs suffered injury as a proximate result of the wrongful act.

## INTEREST

126.    Plaintiffs are entitled to receive, and hereby request, pre- and post-judgment interest.

## ATTORNEYS' FEES

127.    Plaintiffs are entitled to recover attorneys' fees and hereby request the same.

## REQUEST FOR JURY TRIAL

128.    Plaintiffs request a jury trial and have tendered the appropriate fee.

## **PRAYER**

WHEREFORE, all Plaintiffs in these consolidated actions and in actions later consolidated herein pray that the Defendants be cited to appear and answer, and that the Plaintiffs have judgment entered in their favor and against the Defendants as follows:

a.      All actual damages arising from the acts set forth herein;

b.      All general damages arising from the acts set forth herein;

c.      All special damages that were foreseeable and resulted naturally but not necessarily from the Defendants' wrongful acts;

d.      Expectancy damages sufficient to put the Plaintiffs in as good a position as they would have been in if the contract had been performed properly.  This includes any consequential losses the Plaintiffs incurred because of the breach of contract. Consequential damages include all foreseeable damages naturally arising from the fact that the Plaintiffs lost their opportunity to become permanent residents and U.S. Citizens;

e.      Special damages arising out of the possibility that the Plaintiffs will be deported;

f.      Special damages arising out of the possibility that the Plaintiffs may be separated from family members because of the acts of the Defendants;

g.      Special damages to compensate the Plaintiffs for their inability to sponsor family members for immigration to the U.S.;

h.    Reliance damages including all funds withheld from the Plaintiffs' paychecks and all money paid to any Defendant for services related to the filing or prosecution of the 245(i) Applications.

i.    Restitution damages;

j.    Unjust enrichment, equitable and quantum meruit damages including an amount sufficient to compensate the Plaintiffs for the additional value added to the Café Express chain of restaurants because the Defendants were able to establish and maintain an indentured work force, thus reducing turnover and requiring the Plaintiffs to work for wages below that of similarly situated workers employed by Café Express;

k.    Lost profits;

l.    Loss of past and future earning capacity;

m.    Past and future pain and suffering;

n.    Past and future mental anguish;

o.    Past and future loss of the value of permanent residency and U.S. Citizenship;

p.    Past and future loss to family members who would have qualified for permanent residency under the LIFE Act Amendment;

q.    Exemplary damages sufficient to penalize each individual Defendant for the outrageous, malicious, or morally culpable conduct set forth herein and sufficient to deter such conduct in the future;

r.      Punitive damages;

s.      For compensatory damages including actual damages consisting of
the amount of money that was taken out of the Plaintiffs'
paychecks, the amount of money that the Plaintiffs would have
earned during a lifetime of employment as a permanent resident
and U.S. Citizen with regular rates of increase both for inflation,
cost of living and advancement in the corporation;

t.      Damages to compensate the Plaintiffs for the fact that they will not
qualify as permanent residents of the United States and will not
have the opportunity to become a Citizen of the United States;

u.      Awarding Plaintiff such other and further relief that this court
deems just and proper under the circumstances;

v.      Pre-judgment and post-judgment interest;

w.      Court costs; and,

x.      Attorneys' fees and costs of this action.

Respectfully submitted,


s/Stan Broome_____
**Stanley D. Broome**
State Bar No. 24029457
**Matthew W. Bobo**
State Bar No. 24006860

BROOME BOBO LLP
105 Decker Court, Ste. 850
Irving,  Texas  75062
(214) 574-7500 (Telephone)
(214) 574-7501 (Facsimile)


**Jaime Barron**
State Bar No. 24009889
Jaime Barron, P.C.
5415 Maple Avenue, Suite 114
Dallas, Texas 75235
(214) 267-9300 (Telephone)
(214) 267-9302 (Facsimile)

**ATTORNEYS FOR THE PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing *Amended and Combined Complaint* has been served on counsel through the ECF system and/or certified mail, return receipt requested, in accordance with the Rules of Civil Procedure as set forth below, on this 31st day of March 2008.

**William D. Cobb, Jr.**
Cowles & Thompson
901 Main Street, Suite 4000
Dallas, TX 75202

**Stephen R. Bailey**
CRUSE, SCOTT, HENDERSON & ALLEN, LLP
2777 Allen Parkway, 7th Floor
Houston, Texas 77019
sbailey@crusescott.com

**Karri J. Webb-Oldham**
Barker, Lyman, Twining, Weinberg & Ferr
1221 McKinney, 3600 One Houston Center
Houston, TX 77010


   s/Stan Broome_____
Stanley D. Broome